■ PAULA L. FRASIER, Appellant, v JOSEPH B. McILDUFF, Respondent.—Mahoney, P. J. Appeal from a judgment of the Supreme Court (Best, J.), entered June 1, 1989 in Fulton County, upon a verdict rendered in favor of defendant.

Plaintiff commenced this action in August 1982 seeking damages for personal injuries allegedly due to the medical malpractice of defendant.* In May 1980 plaintiff was diagnosed as having mitral stenosis, a condition which occurs when the mitral valve of the heart, which regulates the flow of blood from the lungs to the heart, is narrowed or constricted. Upon admission to the hospital the 16-year-old plaintiff was found to be 5½ weeks pregnant. Since plaintiff's condition made it impossible to carry a fetus to term, a decision was made by the hospital cardiology department and plaintiff's obstetrician that an abortion was necessary. The pregnancy was terminated on June 2, 1980.

On June 6, 1980, defendant commenced a surgical procedure known as a closed mitral commissurotomy whereby an incision is made in the chest and the surgeon inserts a finger or a dilator into the constricted valve in an attempt to fracture or stretch the valve. Here, after several attempts to fracture the valve by using his finger were unsuccessful, defendant used an instrument known as a Tubbs dilator. Defendant testified that when the dilator was withdrawn he "could feel * * * a spray of blood * * * indicating that the valve was leaking significantly". The leakage indicated that plaintiff had to be placed on a heart/lung machine in preparation for an open procedure. Plaintiff's parents were advised as to what had occurred and the procedure being followed. Plaintiff's mitral valve was removed and replaced with a five-millimeter Hancock porcine (pig) valve.

On the following morning, June 7, 1980, plaintiff was unable to move her legs. A neurologist diagnosed the condition as ischemia, a lack of blood flow, to the lower spinal cord. Plaintiff has never recovered the use of her legs and is permanently paralyzed. After trial, a jury returned a verdict in favor of defendant dismissing the complaint. Supreme Court denied plaintiff's motion to set aside the verdict. This appeal by plaintiff ensued.

Plaintiff essentially maintains that (1) the performance of the heart operation four days following the termination of her pregnancy, (2) the use of the Tubbs dilator and the consequent tearing of the mitral valve, (3) the choice and length of the surgical procedure, and (4) the failure by defendant to inform plaintiff and her parents of all the risks involved, cumulatively, satisfied her burden of proving a prima facie case of

---

* Originally, Albany Medical Center Hospital was named defendant but was later released from the action by order dated August 8, 1984.

medical malpractice. Thus, it is plaintiff's position that Supreme Court abused its discretion in finding that the verdict was in accord with the weight of the evidence. Plaintiff also argues that she is entitled to a finding of medical malpractice pursuant to the doctrine of res ipsa loquitur.

We disagree. A verdict may be successfully challenged as against the weight of the evidence only when the evidence preponderates so greatly in the movant's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence (*Schoch v Dougherty*, 122 AD2d 467, 468, *lv denied* 69 NY2d 605; *Rowe v Board of Educ.*, 120 AD2d 850, 851, *lv denied* 68 NY2d 609). Such is not the case herein.

On the first issue, plaintiff's expert, Dr. Nathan Reich, who was not board-certified in cardiology and who had never performed heart surgery, testified that performance of such surgery so close to plaintiff's abortion was a departure from accepted standards of medical practice. This view was based on Dr. Reich's opinion that due to plaintiff's pregnancy she had "cold agglutins" in her blood which would increase the blood's coagulability so that blood clots could form, thereby increasing the risk of surgical complication. Both Dr. James De Weese, a physician board-certified in cardiothoracic surgery, and defendant, a board-certified cardiothoracic surgeon, disagreed and testified that as long as plaintiff had been cleared for surgery by her pediatric cardiology and surgical groups, it was accepted medical practice to perform heart surgery in this time frame. Further, tests performed prior to plaintiff being cleared for surgery revealed that the precise level of cold agglutins in plaintiff's blood was within "mid-range" and presented no surgical risk.

Next, the record shows a sharp conflict in the testimony of the parties' experts with respect to the use of the Tubbs dilator. Dr. Reich testified that when defendant's attempt to perform the closed mitral commissurotomy was unsuccessful because he was unable to fracture the mitral valve with his finger, defendant should have immediately opened the chest to perform an open commissurotomy rather than use the Tubbs dilator. In his opinion, use of the dilator during the closed procedure resulted in the tear of the leaflet covering the valve leading to mitral insufficiency. Dr. De Weese disagreed and stated that the use of a Tubbs dilator comported with good and accepted medical standards and that the degree of mitral insufficiency caused by the tear in the leaflet covering the valve had no affect on plaintiff's blood supply, volume or pressure and was not causally related to plaintiff's paralysis.

Such proof, considered together with the qualifications of the experts, presented a classic issue of fact for jury resolution.

A similar factual issue was created by the testimony of plaintiff's medical expert that there was a causal connection between the choice and length of the surgery and plaintiff's paralysis, in contrast to the proof of defendant's expert that neither the type of surgery nor the time plaintiff was connected to the heart/lung machine was causally related to plaintiff's condition. Again, such proof is singularly amenable to jural resolution and the verdict should not be disturbed where, as here, the jury had ample basis to conclude that plaintiff's postoperative condition was not attributable to any deviation from accepted community standards of medical practice by defendant (see, Toth v Community Hosp., 22 NY2d 255, 262; Schoch v Dougherty, 122 AD2d 467, supra). Here, Dr. De Weese testified that plaintiff was an ideal candidate for a closed commissurotomy because she was young, had not had time to form calcification in the mitral valve, and the heart catherization showed that there was no evidence of a blood clot in the left atrium and ventricle.

Turning to the issue of informed consent, we agree with the jury's conclusion, expressed as a negative response to Supreme Court's written inquiry, that defendant obtained plaintiff's informed consent, and, further, that a reasonable person would not have refused surgery having been informed of the risks involved. This conclusion flows from plaintiff's testimony in an examination before trial that defendant informed both her and her mother of the risks and the possibility that open-heart surgery and valve replacement might be necessary, which testimony cast reasonable doubt on plaintiff's trial testimony denying any such disclosure or discussion. The conclusion is supported by the trial record, which reveals that plaintiff's mother testified that she signed the consent form for the surgical procedure performed by defendant, who testified concerning his discussions with plaintiff and her parents on this issue. Thus, it is clear that the jury could have reasonably concluded that plaintiff and her parents knew of the possibility of open-heart surgery and valve replacement and the attendant risks prior to consenting to the surgical procedure.

Finally, we reject plaintiff's contention that a new trial is warranted by reason of Supreme Court's failure to fully and adequately explain to the jury the doctrines of res ipsa loquitur and proximate cause. The doctrine of res ipsa loquitur was charged at plaintiff's request, over defendant's objection, and plaintiff consented to the court's repetition of that part of its

charge on that doctrine when the jury requested the court to "re-read charge on res ipsa loquitur". Likewise, plaintiff consented to the court's proposition to "re-read its charge on proximate cause". Thus, by failing to object to the court's recharges on these matters, the issues are not preserved for appellate review *(see,* CPLR 4110-b).

Judgment affirmed, without costs. Mahoney, P. J., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.