■ JAMES BETTER, Individually and as Executor of PATRICIA W. BETTER, Deceased, Appellant, v TERESA McCARTHY et al., Respondents.—Harvey, J. Appeal from an order of the Supreme Court (Cobb, J.), entered November 13, 1989 in Columbia County, which denied plaintiff's motion to set aside the verdict in favor of defendants.

In 1973, when she was 48 years of age, plaintiff's wife, Patricia W. Better (hereinafter decedent), became a gynecological patient of defendants.* Although decedent went to defendants for routine check-ups from 1973 to 1979, she did not come in for an exam in 1980. At a February 10, 1981 appointment at defendants' office, defendant Teresa McCarthy performed a manual breast examination upon decedent and found nothing abnormal. Decedent was scheduled for a return visit on an unrelated complaint two weeks later. Prior to the later appointment, decedent felt a lump in her right breast. After examining decedent on February 26, 1981, McCarthy ordered a mammogram. Upon review of the mammogram

* When decedent became a patient of defendants in 1973, defendants were associates who practiced medicine in the field of obstetrics and gynecology. Defendants became partners in 1975 and became a professional corporation in 1979.

results, McCarthy advised decedent that the lump was suspicious and needed to be biopsied. McCarthy referred decedent to a surgeon, Roger Melabranche, after which time decedent was no longer treated by defendants.

A biopsy subsequently revealed that the tumor was malignant, and Melabranche performed a modified mastectomy on decedent's right breast in March 1981. In May 1982, decedent was found to have microcalcifications in her left breast, which Melabranche believed to be associated with cancer, and a simple mastectomy was then performed on the left breast. In May 1983, decedent was diagnosed as having metastic breast carcinoma in the lung, and a lobectomy was performed. The cancer apparently continued to spread, and decedent subsequently died in November 1984.

Plaintiff then commenced this medical malpractice and wrongful death action against defendants and Bellevue Maternity Hospital, which was granted summary judgment prior to trial. At trial, plaintiff attempted to prove that, in light of what defendants knew or should have known about decedent's medical history and other risk factors, defendants were negligent in failing to order a mammogram that might have detected the beginning stages of decedent's breast cancer earlier. Defendants' experts disputed plaintiff's allegations and testified that, given the information available to defendants and the accepted medical standards prevalent at the time defendants treated decedent, they were not negligent in failing to order the test. Following the close of evidence, the jury returned a verdict in favor of defendants. Plaintiff unsuccessfully moved to set aside the verdict and this appeal by plaintiff followed.

Initially, we disagree with plaintiff that the jury's verdict was against the weight of the evidence. It is beyond cavil that "[a] verdict may be successfully challenged as against the weight of the evidence only when the evidence preponderates so greatly in the movant's favor that the jury could not have reached its conclusion on any fair interpretation of the evidence" (*Frasier v McIlduff*, 161 AD2d 856, 858; *accord, Fieldy v Weimer,* 169 AD2d 961). Such a situation has not been presented in this case. Although it is possible that the jury could have credited plaintiff's expert testimony to the effect that defendants were negligent in not ordering routine mammograms during the course of their treatment of decedent, the fact remains that defendants produced substantial evidence to the contrary which the jury was free to credit. Specifically, defendants produced two expert physicians who testified that

the failure to offer mammography to decedent during the years in question was not a deviation from accepted medical standards at that time.

A sharply disputed issue at trial was whether defendants, upon being told during the taking of decedent's initial medical history that her paternal aunt had cancer, should have pressed further and learned that decedent's aunt actually had breast cancer. According to plaintiff this fact, if known, would have required defendants to order routine mammograms for decedent. Defendants' experts specifically disagreed with this contention, however, and testified that, unlike a situation where a woman's mother, sister or daughter had breast cancer, a family history of a paternal aunt dying of breast cancer would not suggest a risk of significant magnitude to outweigh the radiation risks associated with mammography at that time. Likewise, the fact that the patient was over 50 years of age in the latter years of defendants' treatment of her would not mandate that such a risk be taken. Significantly, Richard Weininger, a specialist in oncology and hematology, testified that there were studies published during the period from 1973 through 1979 which indicated that the effects of radiation associated with mammography might, in fact, cause more breast cancer than was detected.

Along with the risks of radiation, the experts also testified as to the other risks of mammography during that time period, which included a high percentage of false negative and false positive results which each carried their own special dangers for the patient. Weininger further testified that the mammography machine in use at Bellevue Maternity Hospital during 1974 to 1981 could only detect tumors of a size of approximately one centimeter. Based on his review of decedent's records, Weininger opined that the size of her tumor in 1979, when she last saw defendants, would have been approximately one tenth of a centimeter in size and therefore could not have been detected by mammography even if defendants had ordered such a test at that time. In fact, the thrust of Weininger's testimony was that when the cancer was detected in February 1981, the tumor was actually discovered in a very early stage and decedent's chances of survival at that time were actually quite good. Weininger explained, however, that certain types of cancer cells are simply so aggressive and fast-spreading that even early detection does not guarantee survival of the patient. Weininger also noted that decedent's cancer began near the breastbone, a location that makes the cancer easier to spread and confers a worse prognosis for

patients than a situation where the cancer appears on the outer part of the breast. Viewing this and other evidence in the light most favorable to defendants, the party prevailing at trial *(see, Dudley v County of Saratoga,* 145 AD2d 689, 691, *lv denied* 73 NY2d 710), it is clear that the jury resolved the conflicts in expert testimony upon a fair interpretation of the evidence. Consequently, it is our view that Supreme Court appropriately denied plaintiff's motion to set aside the verdict.

The remaining issues raised by plaintiff have been examined and found to be unavailing. We find no reversible error evident in either the order of the questions contained in the interrogatories submitted to the jury or the fact that a witness was allowed at one point to read from a report that Supreme Court later ruled to be inadmissible. Significantly, both these issues relate to the question of the breast cancer of decedent's paternal aunt, which, viewing the evidence in the light most favorable to defendants *(see, supra),* was an irrelevant factor in establishing defendants' possible negligence. As for other challenged rulings made by Supreme Court, we find that the court properly refused to admit into evidence certain exhibits that were not truly relevant in establishing appropriate standards of medical care. Finally, we find that any error that may have occurred due to Supreme Court's limitation of the jury's consideration of a certain exhibit to only one of the defendants to be harmless. Plaintiff's attorney in his summation argued at length to the jury as to those aspects of the exhibit which were beneficial to his client in his estimation.

Order affirmed, without costs. Mahoney, P. J., Weiss, Mikoll, Crew III and Harvey, JJ., concur.