■ ANNE M. HARDING, Appellant, v NOBLE TAXI CORP. et

al., Respondents. ANNE M. HARDING, Appellant, v LENOX HILL HOSPITAL et al., Respondents.—Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered August 7, 1990, which, *inter alia,* dismissed the action against the defendants Lenox Hill Hospital and William Rosenblatt, M.D., and which, upon a jury verdict, found in favor of the defendant Beverly Hurd, M.D., unanimously reversed, insofar as appealed, on the law, the facts and in the exercise of discretion, and a new trial ordered as to the defendants Lenox Hill Hospital, William Rosenblatt, M.D., and Beverly Hurd, M.D., on the issues of liability and damages, before a different Justice of the Supreme Court, without costs.

In these consolidated actions, the plaintiff sought to recover damages for personal injuries sustained while a passenger in a taxicab which collided with another taxicab and for the alleged malpractice which occurred when she sought treatment for her injuries. The plaintiff hit her head against the divider of the taxicab in the accident on February 11, 1982, and was taken by ambulance to Bellevue Hospital. After a friend referred her to the defendant, William Rosenblatt, M.D., a plastic surgeon, she transferred to the emergency room at the defendant Lenox Hill Hospital, with which Dr. Rosenblatt was affiliated.

A nurse in the emergency room removed the bandage over the plaintiff's eye and gave her a tetanus shot. The plaintiff testified that the nurse did not obtain her vital signs. When Dr. Rosenblatt arrived, the plaintiff told him that she did not know if she had lost consciousness after the accident. He sutured and dressed her wound and told her that she just had a "football concussion" and that she would be fine. He gave her a prescription for Tylenol with codeine and discharged her. The plaintiff's experts testified that prescribing such medication constituted a departure from accepted standards of medical practice because codeine increases intracranial pressure, exacerbating a head injury and because it deadens nerve perception of pain, leading the patient to be more active than advisable.

According to the plaintiff, Dr. Rosenblatt never took her vital signs, never performed a neurological examination, never consulted a neurologist or a physician trained in emergency medicine and discharged her without furnishing her with a head trauma sheet. Lenox Hill Hospital guidelines require that a head trauma sheet, which alerts patients to dangerous symptoms such as nausea, vomiting, drowsiness, disorientation, irritability, clear fluid dripping from ears or nose,

blurred vision and stiffness of the neck and informs them to contact a physician or to return to the emergency room should such symptoms develop, be furnished to patients suffering a head injury. The head trauma sheet also instructs patients not to use narcotics unless specified by a physician and also advises patients to have someone monitor them to arouse them every hour for 24 hours.

The plaintiff filled the prescription for Tylenol with codeine and went home with the help of her friends. One of her friends telephoned the emergency room at Lenox Hill Hospital later that evening because the plaintiff was in pain, her eyes were swollen shut, she was drowsy and felt ill. The emergency room physician responded that the plaintiff just needed rest. The plaintiff's friends then left her alone in the apartment. She took the Tylenol with codeine and went to sleep, but awoke at 4:00 A.M. with a severe headache. She also threw up blood, was dizzy and a clear fluid was dripping from her nose. She took more medication and went back to sleep.

When the telephone awakened her at 11:00 A.M. the next morning, the plaintiff felt worse and had most of the symptoms listed on the head trauma sheet. She took more Tylenol with codeine. Her mother arrived later that afternoon, prepared a list of her daughter's symptoms and accompanied her to the emergency room at Lenox Hill at approximately 8:00 P.M. The emergency room physician, the defendant Dr. Beverly Hurd, advised the plaintiff to go home and rest and to drink clear liquids. Dr. Hurd did not instruct the plaintiff to stop taking the Tylenol with codeine even though she testified at trial that she would not have prescribed it for a patient who had suffered a head injury. According to the plaintiff, Dr. Hurd, although provided with a list of her symptoms, failed to conduct a complete neurological examination or to consult with a neurologist, and failed to furnish her with a head trauma sheet.

Upon her discharge from the emergency room, the plaintiff went to her parents' home in Long Island. During the first week after the accident, the plaintiff's condition failed to improve. She continued to vomit blood, discharge clear fluid from her nose, sleep most of the time and had difficulty walking. She then consulted her family physician who referred her to a neurologist. The plaintiff has been diagnosed as suffering from brain damage and has been in and out of hospitals and rehabilitation centers since the accident.

Fluid began to accumulate in the plaintiff's brain after the accident, causing it to swell. The parties dispute the time

period over which this condition, known as cerebral edema, began to develop. The plaintiff's expert testified that when the fluid was permitted to remain, the swelling led to the death of the nerve cells in the brain. He added that had the plaintiff received timely, proper treatment, 80 percent of her injuries could have been prevented.

The plaintiff alleged that Lenox Hill Hospital and Dr. Rosenblatt departed from accepted standards of medical practice when the emergency room nurse and Dr. Rosenblatt failed to obtain her vital signs, when Dr. Rosenblatt performed an incomplete neurological examination and failed to record the results of the examination on the hospital chart, failed to consult a neurologist or physician trained in emergency room medicine, prescribed Tylenol with codeine, discharged the plaintiff from the hospital on the evening of the accident, and failed to furnish her with a head trauma sheet. The plaintiff further alleged that the hospital was also liable for the purported malpractice of the physician who spoke to the plaintiff's friend on the telephone, who instead of advising the plaintiff to return to the hospital, informed her that she just needed rest.

With regard to Dr. Hurd, the plaintiff alleged that she committed malpractice by failing to perform a complete neurological examination, by failing to consult with a neurologist, by failing to order a Computerized Axial Tomography (CAT) scan, by failing to furnish the plaintiff with a head trauma sheet upon her discharge from the hospital and by permitting the plaintiff to continue taking the Tylenol with codeine.

After the plaintiff's final medical expert completed his direct examination, but prior to the completion of the plaintiff's case, the trial court *sua sponte* dismissed the action against Dr. Rosenblatt and Lenox Hill Hospital for failure to establish a prima facie case. The court found that although the testimony of the plaintiff's medical experts set forth a number of departures from accepted standards of medical practice by all of the medical defendants, only a prima facie case against Dr. Hurd and the hospital, as her employer, had been established based on Dr. Hurd's failure to consult a neurologist or neurological resident and failure to order a CAT scan. The court held that the plaintiff's experts failed to establish that any other departures proximately caused the plaintiff's injuries. The plaintiff's motion to reopen to adduce further testimony from her medical expert was denied.

The jury determined that one of the taxicab drivers was

negligent and that his negligence was the proximate cause of the plaintiff's injuries. The jury did not find Dr. Hurd negligent in failing to arrange for a neurological consultation and/or CAT scan.

On appeal, the plaintiff maintains that errors committed by the trial court mandate a new trial. We agree.

The trial court erred in concluding that the plaintiff did not make out a prima facie case based on the purported failure of her medical experts to establish that the departures of Dr. Rosenblatt and the hospital proximately caused her injuries. " 'To be entitled to judgment as a matter of law, the defendant movant has the burden of showing that plaintiff failed to make out a prima facie case; the plaintiff's evidence must be accepted as true, and plaintiff must be given the benefit of every favorable inference which can reasonably be drawn from that evidence * * * The motion should be granted only if there is no rational process by which the jury could find for the plaintiff as against the moving defendant' " (Windisch v Weiman, 161 AD2d 433, 437, quoting Hylick v Halweil, 112 AD2d 400).

In dismissing the complaint against Dr. Rosenblatt and the hospital, the trial court apparently concluded that any departure by them was irrelevant because the plaintiff's cerebral edema did not develop until 24 to 48 hours after the accident, after she was treated by Dr. Rosenblatt. Since the plaintiff returned to the hospital on her own, Dr. Rosenblatt's alleged failure to furnish the plaintiff with a head trauma sheet was also deemed irrelevant. The court also determined that any purported negligence by Dr. Hurd superseded any negligence committed by Dr. Rosenblatt and that the plaintiff's failure to introduce evidence regarding the amount of medication she took precluded her expert from offering an opinion as to causation.

Contrary to the trial court's recollection, the record contains conflicting testimony as to when the cerebral edema began to develop. While the plaintiff did return to the hospital the next day after being released by Dr. Rosenblatt, the head trauma sheet would have alerted her to the dangerous nature of her symptoms and would have advised her to seek immediate medical attention. Nor would any purported negligence on the part of Dr. Hurd relieve Dr. Rosenblatt from liability since the initial wrongdoer cannot escape liability by demonstrating that a subsequent treating physician was also negligent (Datiz v Shoob, 71 NY2d 867).

With respect to the medication, the testimony indicated that the plaintiff took the Tylenol with codeine on at least three occasions and the bottle containing the remaining tablets was available for inspection. Further testimony from the plaintiff also could have been introduced to determine the exact number of tablets taken. The experts' testimony also established that had the other departures alleged not occurred and had proper procedures been followed, the plaintiff's condition would have been diagnosed and treated in time to substantially reduce the extent of her injuries.

To establish a prima facie case, the plaintiff must show that the defendant's negligence was a substantial cause of the events which produced the injury *(Mortensen v Memorial Hosp.,* 105 AD2d 151). The plaintiff is not required to demonstrate that the substantial factor is the only cause of the injury nor need she eliminate every other possible cause *(supra).* Of course, it is the jury's function to determine the credibility of witnesses and the weight to be accorded the testimony of experts *(Windisch v Weiman, supra).* It is also well settled that the issue of proximate cause is best left for the jury to determine *(supra; Kallenberg v Beth Israel Hosp.,* 45 AD2d 177, *affd* 37 NY2d 719; *O'Connell v Albany Med. Center Hosp.,* 101 AD2d 637), particularly here, where the cause and effect relationship was one that might not have been able to have been established with specific certainty and created a divergence of opinion among the various experts *(see, Matott v Ward,* 48 NY2d 455).

We would also note that the trial court's persistent interjection into the questioning and testimony of the plaintiff's experts hampered her ability to establish her case. Moreover, even if the trial court had been correct in its determination that the plaintiff failed to establish causation, the court erred in denying her motion to reopen so that further testimony could be introduced on this issue *(Lagana v French,* 145 AD2d 541; *Kennedy v Peninsula Hosp. Center,* 135 AD2d 788), despite counsel's failure to make an offer of proof. The plaintiff's medical expert was still in the courthouse at the time the court ordered the action dismissed against Dr. Rosenblatt and the hospital and no prejudice would have accrued to the defendants by recalling him. The fact that the defendants would have had to contest the matter on the merits does not constitute prejudice *(Lagana v French, supra).*

Further error was committed by denying the plaintiff's request to submit to the jury Dr. Hurd's failure to furnish a head trauma sheet as an additional theory of liability. Accept-

ing the plaintiff's evidence as true, this failure was a departure from accepted standards of medical practice which would have notified the plaintiff of the need to seek immediate medical attention instead of waiting a week while resting at her parents' home in accordance with Dr. Hurd's instructions.

We also agree with the plaintiff that she was prejudiced by the trial court's instruction to the jury after the dismissal of the case against Dr. Rosenblatt and Lenox Hill Hospital. Instead of merely advising the jury that these defendants were no longer in the case and that they were to draw no inference therefrom, the court first reviewed for the jury the testimony of two of the plaintiff's medical experts and then analyzed the deficiencies in their testimony as it related to the plaintiff's allegations against the two defendants. The court then instructed the jury that "[u]nder the circumstances, I would not submit any claims against Dr. Rosenblatt, because even if he was negligent, that didn't cause injury to the patient, and I would not submit any claims against any other Lenox Hill Hospital personnel other than Dr. Hurd, because even if there was negligence on the part of those employees of the hospital, that didn't cause injury."

It is error for a court to advise a jury at length as to its reasons for dismissing a particular cause of action (*Surplus Equip. v Xerox Corp.*, 120 AD2d 582, *lv denied* 68 NY2d 606). The trial court must be cautious in providing instructions which do not influence the jury in some way with respect to the party remaining in the case (*see, Acosta v Zito*, 114 AD2d 757). In that regard, the court should have simply advised the jury that the two defendants were no longer in the case and to draw no inference therefrom (*Surplus Equip. v Xerox Corp., supra*). The instructions provided, however, left the jury with the impression that the trial court favored the defendants' position over the plaintiff's and invalidated the opinions of the plaintiff's experts, despite the fact that the plaintiff would also be relying on those opinions to establish the negligence of Dr. Hurd, the only remaining defendant. While the failure to provide a simplified instruction has been criticized yet not found to warrant reversal (*supra*), in this case, despite counsel's failure to object to the instruction provided, the error was so prejudicial that we would reverse even in the absence of the other errors committed.

We conclude that the cumulative effect of the errors warrants a new trial against all the medical defendants on all of the issues (*see, Gruntz v Deepdale Gen. Hosp.*, 163 AD2d 564; *Braun v Rycyna*, 100 AD2d 721; *Nicholas v Reason*, 84 AD2d

915). Moreover, the errors regarding liability, particularly those conveying to the jury the court's impressions of the plaintiff's case, tainted the damages finding as well (cf., *Schabe v Hampton Bays Union Free School Dist.,* 103 AD2d 418; *and see, Trimarco v Klein,* 56 NY2d 98; *Miller v Miller,* 143 AD2d 407, *lv dismissed* 74 NY2d 699).

We have considered the parties' remaining contentions and find them to be without merit.

Accordingly, the judgment is reversed as to all the medical defendants and a new trial is ordered as to liability and damages, before a different Justice of the Supreme Court. Concur—Rosenberger, J. P., Wallach, Ross and Smith, JJ.