■ KENNETH SLAYBOUGH, Respondent, v NATHAN LITTAUER HOSPITAL, Appellant, and THOMAS S. EAGAN, Respondent. [608 NYS2d 745] —Cardona, P. J. Appeals (1) from a judgment of the Supreme Court (Best, J.), entered November 9, 1992 in Fulton County, upon a verdict rendered in favor of plaintiff against defendant Nathan Littauer Hospital, and (2) from an order of said court, entered October 6, 1993 in Fulton County, which, *inter alia,* denied said defendant's motion to set aside the verdict.

Between 12:50 P.M. and 1:00 P.M. on February 22, 1983, plaintiff, a manual laborer, accidentally stabbed himself in the palm of his left hand while he was sharpening a knife at work. After a company nurse wrapped a cloth on the wound and tried to stop the bleeding, a co-worker drove plaintiff to defendant Nathan Littauer Hospital (hereinafter the hospital), located about 10 minutes away. About an hour after plaintiff arrived in the emergency room he was briefly examined by Vincente Gonzalo, an emergency room physician, who advised plaintiff that he should have an orthopedic surgeon treat the injury. At that time defendant Thomas S. Eagan, a hand specialist on staff at the hospital and the only orthopedic

surgeon in Fulton County, was engaged in surgery at the hospital. Plaintiff was advised to wait until Eagan could see him and he did wait until sometime between 7:00 P.M. and 8:00 P.M. that day. According to plaintiff, during the entire time he waited he was never taken to a treatment room, his wound was never cleaned or dressed, no medication or other treatment was administered and no one asked him if he would prefer to see another orthopedic surgeon elsewhere. It was later learned by plaintiff that there were two other orthopedic surgeons some 10 miles away in nearby Montgomery County. When Eagan finally examined plaintiff, he observed that his hand was dirty and covered with grease, and that two tendons in his hand that controlled flexion of the knuckle joints in the index finger were severed. Eagan told plaintiff that he had to have surgery right away. Eagan operated on plaintiff that evening. Following the operation, Eagan examined plaintiff several times and concluded that the repair had failed. At Eagan's recommendation, plaintiff underwent a second operation in May 1983. During this operation Eagan took a portion of a tendon from plaintiff's second toe on his left foot and grafted it to the tendon in plaintiff's hand. This operation was not successful and failed to restore any additional function to plaintiff's left index finger. Furthermore, the toe from which the graft was taken now droops from the removal of the tendon, a normal consequence of the tendon removal.

Plaintiff commenced this action against Eagan and the hospital alleging medical malpractice. Following discovery, defendants separately moved for summary judgment and the motions were denied. A trial was then held and, at the close of plaintiff's proof, Eagan moved that the case against him be dismissed which motion was denied. Thereafter, at the conclusion of all the evidence and prior to any motion by Eagan for a trial order of dismissal, plaintiff's counsel advised Supreme Court at a charge conference that plaintiff and Eagan had entered into a stipulation to discontinue the action against Eagan, as plaintiff had determined that no medical malpractice had been proven against Eagan. At the same time, Eagan's counsel moved to dismiss the hospital's cross claim, contending that the hospital was not entitled to contribution from Eagan for any damages awarded to plaintiff as a consequence of the second surgery as that surgery was an independent event and there had been no negligence claim by plaintiff against the hospital arising out of that surgery. Supreme Court granted both requests over objection by the hospital.

Ultimately, the jury returned a verdict against the hospital

in the total amount of $250,000 (representing $90,000 for past pain and suffering and $160,000 for future pain and suffering). The hospital's motion to set aside the verdict was denied. Supreme Court granted plaintiff's application to amend the ad damnum clause from $200,000 to $250,000. The hospital appeals from the judgment on the verdict, as well as the order which denied its motion to set aside the verdict and granted plaintiff's motion to amend the ad damnum clause.

The hospital's first contention is that Supreme Court improperly denied its pretrial motion for summary judgment. We disagree. Although the medical affidavits submitted by the hospital demonstrate its prima facie entitlement to summary judgment (see, Zuckerman v City of New York, 49 NY2d 557, 562), we find that plaintiff, as the nonmoving party, sufficiently demonstrated the existence of a material triable fact issue (see, Nandy v Albany Med. Ctr. Hosp., 155 AD2d 833, 833-834). In his affidavit opposing summary judgment, plaintiff's medical expert, Edward Pasquarella, essentially opined that the hospital's failure to properly diagnose and secure prompt corrective surgical intervention for plaintiff constituted a deviation from accepted standards of medical practice which was a significant factor in the failure of the primary surgical repair of plaintiff's injury. We find this statement of expert opinion (see, Alvarez v Prospect Hosp., 68 NY2d 320, 327) substantively sufficient to withstand the hospital's motion (see, Nandy v Albany Med. Ctr. Hosp., supra, at 834).

We reject the hospital's next contention that plaintiff's expert proof at trial on the issue of proximate cause was insufficient as a matter of law to support the jury's verdict. To decide this question we need to employ the standard of review expressed in Cohen v Hallmark Cards (45 NY2d 493, 499), i.e., that there is "no valid line of reasoning and permissible inferences which could possibly lead rational [persons] to the conclusion reached by the jury on the basis of the evidence presented at trial". Our review of the record satisfies us that there is sufficient proof so that a rational view of the evidence (see, Harding v Noble Taxi Corp., 182 AD2d 365, 369; Windisch v Weiman, 161 AD2d 433, 437) would permit the jury to find that the hospital's delay of more than six hours in securing treatment for plaintiff, during which it also failed to clean and dress the wound, was the "substantial cause" (Harding v Noble Taxi Corp., supra, at 370) of the degenerated condition of plaintiff's tendons, which in turn resulted in the failure of the initial repair and thus the permanent injury to plaintiff's left index finger (see, Mortensen v Memorial Hosp.,

105 AD2d 151, 158-159; *Monahan v Weichert,* 82 AD2d 102, 108; Restatement [Second] of Torts § 432 [2]; § 433 B, comment *b).*

We also reject the hospital's contention that Supreme Court erred in denying its motion to set aside the verdict as against the weight of the evidence. The evidence presented at trial did not " 'preponderate[ ] so greatly in the [hospital's] favor that the jury could not have reached its conclusion on any fair interpretation of the evidence' " *(Fieldy v Weimer,* 169 AD2d 961, 962, quoting *Frasier v McIlduff,* 161 AD2d 856, 858; *accord, Stanavich v Pakenas,* 190 AD2d 184, 186, *lv denied* 82 NY2d 659).

Regarding the discontinuance of the claims against Eagan, we note that Supreme Court has broad discretion *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, C3217:12, at 732) on a motion for discontinuance *(see,* CPLR 3217 [b]). Given Pasquarella's concession on cross-examination that Eagan's choice during the second operation to put in a free tendon graft "without a tunneling procedure" was really a "judgment call" and not a deviation from accepted medical standards, we find no abuse of discretion in granting plaintiff's application for discontinuance against Eagan, nor Eagan's application to dismiss the hospital's cross claim against him.

Furthermore, based upon the evidence adduced, we cannot say that the jury's award deviated "materially from what would be reasonable compensation" (CPLR 5501 [c]; *see, e.g., Leon v Peppe Realty Corp.,* 190 AD2d 400, 416; *Dauria v City of New York,* 178 AD2d 289, 290, *lv denied* 80 NY2d 751). We are also unpersuaded by the hospital's argument that it was prejudiced by Supreme Court's grant of plaintiff's application to increase its ad damnum clause from $200,000 to $250,000 *(see, Loomis v Civetta Corinno Constr. Corp.,* 54 NY2d 18, 23).

We have considered the hospital's other contentions raised upon this appeal and find them lacking in merit. Mikoll, Crew III, Casey and Weiss, JJ., concur. Ordered that the judgment and order are affirmed, with one bill of costs.