■ DEBORAH VALENTINE et al., Respondents, v JOSE LOPEZ, Appellant, et al., Defendant. [725 NYS2d 714] —Mugglin, J. Ap-

peal from a judgment of the Supreme Court (O'Brien, III, J.), entered June 22, 2000 in Cortland County, upon a verdict rendered in favor of plaintiffs.

In March 1996, plaintiff Deborah Valentine (hereinafter plaintiff) began to treat with her family physician for pain and swelling in her right wrist. Although no definitive diagnosis was made, the family physician suspected carpel tunnel syndrome despite normal nerve conduction studies. In September 1996, when a conservative course of treatment provided no relief to plaintiff, the family physician referred plaintiff to defendant Jose Lopez (hereinafter defendant), an orthopedic surgeon specializing in musculoskeletal conditions of the wrist and hand. Defendant made a diagnosis of de Quervain's disease, a condition in which the tendons along the thumb side of the wrist are compressed by the encircling tendon sheath, creating pain and diminishing the useful function of the wrist and hand. When a course of treatment consisting of anti-inflammatory medications and splinting proved unsuccessful, defendant performed a surgical release of the tendon sheath and tendons, during which he discovered the tendons to be normal. With no improvement in her condition in March 1997, plaintiff's family physician referred her to a rheumatologist who diagnosed plaintiff as suffering from reflex sympathetic dystrophy (hereinafter RSD). Thereafter, plaintiff and her husband, derivatively, commenced this medical malpractice action alleging, *inter alia*, that defendant was negligent in failing to properly diagnose plaintiff's condition. After trial, the jury returned a verdict in plaintiffs' favor, awarding damages totaling $2,500,000.* Defendant's motions to set aside the verdict were denied and defendant now appeals from the judgment.

Defendant first contends that plaintiffs' complaint should be dismissed since the jury verdict was not based on legally sufficient evidence to establish a deviation from accepted medical practice or, if such a deviation occurred, it was not the proximate cause of plaintiff's injuries. Alternatively, defendant argues that the verdict must be set aside as against the weight of the evidence. To set aside a jury verdict on the ground that it is not supported by legally sufficient evidence, there must be "no valid line of reasoning and permissible inferences which could possibly lead rational men to the conclusion reached by

---

* The award to plaintiff was as follows: past lost earnings, $40,000; past pain and suffering, $10,000; future lost earnings, $460,000 (15 years); future pain and suffering, $740,000 (35 years); and future medical expenses, $1,000,000 (35 years). The jury also awarded $250,000 on the spousal derivative claim.

the jury on the basis of the evidence presented at trial" (*Cohen v Hallmark Cards*, 45 NY2d 493, 499).

To establish their claim for medical malpractice, plaintiffs must prove, by a preponderance of the evidence, a deviation or departure from accepted medical practice and that such departure was a substantial factor in producing plaintiff's injuries (*see, Prete v Rafla-Demetrious*, 224 AD2d 674, 675). In our view, plaintiffs' evidence, if accepted by the jury, was legally sufficient to establish that defendant departed from good and accepted medical practice by failing to obtain the complete medical records from the referring family physician, by incorrectly making an initial diagnosis of de Quervain's disease, and by failing to conduct further tests following the surgical procedure of de Quervain release and discovery of normal tendons. Plaintiffs' medical expert testified that obtaining the complete medical records from the referring family physician would have detailed symptoms consistent with RSD from March 1996 and would have included a suggestion by a physical therapist in July 1996 that RSD may be a more appropriate diagnosis than carpel tunnel syndrome. Thus, it was not irrational for the jury to conclude that throughout the entirety of defendant's treatment of plaintiff, she exhibited symptoms consistent with RSD and that defendant failed to consider or rule out such a diagnosis. Likewise, the jury could rationally conclude that despite the finding of normal tendons upon surgical intervention, suggesting that de Quervain's disease was an incorrect diagnosis, defendant continued to ignore RSD as a possible diagnosis.

In addition, plaintiffs' evidence demonstrates that there is no merit to defendant's contention that his failure to diagnose RSD did not proximately cause plaintiff's injuries since an earlier diagnosis would not have made any difference in the outcome. The evidence reveals that RSD develops through three stages. The medical testimony indicates that if diagnosed in its earliest stage, there is a possibility of a full recovery. On the other hand, when RSD reaches stages two and three, there is little, if any, hope of recovery. The rheumatologist, upon initially diagnosing plaintiff with RSD, testified that it was between the second and third stages. Furthermore, the rheumatologist described in detail the differing symptoms of RSD associated with each stage. Given this evidence, we conclude that the jury could rationally find that the symptoms exhibited by plaintiff during the early period of defendant's treatment were consistent with first stage RSD and defendant's failure to diagnose RSD and prescribe appropriate treatment at that time

directly caused plaintiff's permanent disabilities. Such jury determinations are given great deference and must be upheld where, as here, they are supported by sufficient evidence, even if other evidence exists supporting a contrary conclusion (*see, Monahan v Devaul*, 271 AD2d 895, 896). Here, sufficient evidence was presented to permit the jury to find that defendant deviated from accepted medical practice and that such deviations were a substantial factor in causing plaintiff's injuries (*see, Slaybough v Nathan Littauer Hosp.*, 202 AD2d 773, 775, *lv dismissed and denied* 83 NY2d 962). This review of the evidence further demonstrates that the verdict is not against the weight of the evidence as the jury's findings with respect to negligence and proximate causation are supported by a preponderance of the evidence (*see, Cohen v Hallmark Cards, supra*, at 498).

Next, we turn to defendant's contention that various alleged evidentiary errors committed by Supreme Court prejudiced defendant to the extent that he was denied a fair trial and require reversal. The first error to which defendant points involves an unsolicited statement by plaintiffs' medical expert that he had previously testified in a case involving defendant. This information was volunteered during cross-examination and, upon objection by defendant's counsel, the court immediately admonished the jury to disregard it and struck it from the record. Although this statement is clearly prejudicial to defendant, the immediate curative instruction, combined with the court's final instructions to the jury not to consider evidence stricken from the record, sufficiently cures any prejudice which may have resulted (*see, People v Grant*, 254 AD2d 639, 640, *lv denied* 92 NY2d 1032; *People v Nagi*, 153 AD2d 964, 965).

Second, defendant contends that Supreme Court improperly excluded expert testimony related to symptoms exhibited in plaintiff's left wrist. This portion of defendant's expert witness testimony was precluded since defendant's expert witness disclosure did not reveal that plaintiff's left wrist symptoms were considered by defendant in forming his diagnosis or that the expert witness would testify that RSD does not initially present bilaterally.

It is well settled that a determination to preclude expert witness testimony based upon a failure to disclose in response to an appropriate demand is within the sound discretion of the trial court (*see, Douglass v St. Joseph's Hosp.*, 246 AD2d 695). Here, defendant's expert witness disclosure clearly neither details nor suggests that the expert would present testimony associated with the symptoms in plaintiff's left wrist or that

RSD does not initially present bilaterally (*see, Chapman v State of New York*, 189 AD2d 1075). In view of the failure of defendant to disclose this information, Supreme Court's preclusion of such testimony does not constitute an abuse of discretion (*see, Kirschhoffer v Van Dyke*, 173 AD2d 7, 9). Additionally, the medical records of the family physician and those of defendant clearly indicate that the focus was upon the condition of plaintiff's right wrist, compounding the potential surprise of the proffered testimony.

Third, we reject defendant's assertion that plaintiffs' medical expert improperly testified to matters not disclosed. Defendant's argument is premised upon his contention that amputation of the hand as a possible future treatment goes beyond the pleadings and expert witness disclosures. Amputation of the right hand as a possible future treatment was not specifically revealed by plaintiff to defendant prior to the testimony of plaintiffs' expert medical witness. Nevertheless, we discern no abuse of discretion in Supreme Court overruling defendant's objection. Plaintiff's expert medical witness was the first witness of the trial and, thus, defendant had a reasonable amount of time in which to formulate his response to this possible future treatment. Additionally, examination of the jury's award to plaintiff for future medical expenses does not suggest that defendant was prejudiced by the testimony. The only evidence presented on the issue of future medical expenses was offered by plaintiffs. Plaintiffs' economist estimated that plaintiff's future medical expenses would be a total of $1,404,389, which the jury reduced to $1,000,000. These medical expenses involved only the cost of medications, not future surgical intervention. Accordingly, in the absence of prejudice to defendant, Supreme Court did not abuse its discretion in failing to strike the testimony concerning amputation.

Finally, defendant asserts that the jury's damage award was excessive. The amount of damages to be awarded is primarily a question of fact for the jury whose determination is accorded considerable deference (*see, Karney v Arnot-Ogden Mem. Hosp.*, 251 AD2d 780, 782, *lv dismissed* 92 NY2d 942). A jury's verdict may be overturned, however, where "it deviates materially from what would be reasonable compensation" (CPLR 5501 [c]; *see, Cochetti v Gralow*, 192 AD2d 974). Since jury awards for personal injury, especially those for pain and suffering, are subjective opinions, formulated without the guidance of precise and detailed guidelines, we look to comparable cases to determine whether the jury's verdict deviates materially from what has been found to be reasonable compensation.

In our view, the evidence of plaintiff's injuries and the comparable cases in New York do not establish that the jury's award materially deviates from reasonable compensation. In reaching this assessment, we are mindful that plaintiff claims 100% loss of use of her dominant hand and arm and that she will suffer from chronic pain for the rest of her life. In comparable circumstances, recent awards for pain and suffering have ranged from $600,000 to $1,500,000 (see, Summerville v City of New York, 257 AD2d 566, lv denied 94 NY2d 755; Farren v Sherlock, Sup Ct, Chautauqua County, June 1995, Gerace, J.). The evidence in support of the husband's derivative claim convinces us that, as a result of plaintiff's injuries, he has suffered and will continue to suffer significant and permanent changes in his life. These changes manifest themselves in the inability of plaintiff to perform her normal household tasks which the husband has been required to take over, the lack of any intimate relationship, a significant curtailment of social activities and the loss of financial support. Additionally, the husband is required to constantly deal with plaintiff's continuing physical and emotional crises, which have a significant impact on his life. Last, we find no error in the award with respect to future medical expenses. Notably, the only evidence with respect to damages came from plaintiffs' witnesses and the jury verdict does not exceed the projected cost of medications for a plaintiff who will require treatment for the remainder of her life.

Cardona, P. J., Mercure, Carpinello and Rose, JJ., concur. Ordered that the judgment is affirmed, with costs.