Garry, J.
Appeal from that part of an order of the Supreme Court (McGrath, J.), entered November 28, 2011 in Rensselaer County, which partially denied plaintiffs motion to partially set aside a verdict on the issue of damages.
In March 2005, plaintiff suffered a ruptured Achilles tendon and other injuries to his left foot and ankle when scaffolding collapsed beneath him while he was working for defendant as a subcontractor on a construction project. Following surgery to repair the ruptured tendon, plaintiff returned to his construe *1196 tion job for approximately one year and then began working as a golf professional, initially in sales and later as an instructor. In July 2006, plaintiff visited the surgeon who had performed the tendon surgery with complaints of severe pain and ankle instability. The surgeon diagnosed moderate to severe Achilles tendinosis — a thickening of the tendon resulting from abnormal scar tissue — as well as an attenuated anterior talofibular ligament, and referred plaintiff to David Dixon, an orthopedic surgeon with a subspecialty in foot and ankle surgery. Dixon determined that, in addition to these conditions, plaintiff also suffered from an injured tarsal coalition in his foot.[1] He performed surgery to remove the coalition and reconstruct the attenuated ligament, and he informed plaintiff that another surgical procedure involving the transfer of a tendon from his foot might eventually be required to correct the Achilles tendinosis. However, he advised deferring the tendon transfer surgery to allow time for the tendon to potentially heal on its own. In a follow-up visit three months later, plaintiff indicated that he was satisfied with the results of the second surgery. Dixon cleared him to return to work as a golf professional and discharged him from his care.
In September 2010, plaintiff returned to Dixon with complaints of pain. Dixon determined that this pain was caused by Achilles tendinosis and by scar tissue in plaintiffs ankle, and he advised plaintiff of treatment options, including the previously described tendon transfer surgery, arthroscopic surgery to remove the ankle scar tissue and nonsurgical measures. Plaintiff elected to defer surgery and pursue a conservative course of treatment, including orthotics and the potential use of an ankle injection.
Plaintiff commenced this personal injury action alleging violations of Labor Law §§ 200, 240 and 241 (6), and Supreme Court granted partial summary judgment to plaintiff on the issue of defendant’s liability pursuant to Labor Law § 240. Following a trial on the issue of damages, the jury awarded plaintiff damages for past lost wages and past and future medical expenses as well as $18,000 for past pain and suffering and $35,000 for future pain and suffering over a 35-year period. Plaintiff moved pursuant to CPLR 5501 (c) to partially overturn the verdict on the basis that the awards for pain and suffering were against the weight of the evidence. In a thorough decision, Supreme *1197 Court partially granted this motion, declining to disturb the award for future pain and suffering but ordering a new trial on the issue of past pain and suffering unless the parties stipulated to increase that award to $50,000. As limited by his brief, plaintiff appeals from this order insofar as it did not amend the future pain and suffering award.
The amount of a damage award for personal injuries is a question of fact for the jury, and “may be set aside only when it deviates materially from what would be reasonable compensation” (Vogel v Cichy, 53 AD3d 877, 878 [2008]; see CPLR 5501 [c]; Valentine v Lopez, 283 AD2d 739, 743 [2001]). As the amount of an award for pain and suffering is a subjective determination that cannot be precisely quantified, whether there is a material deviation is determined by examining comparable cases (see Nolan v Union Coll. Trust of Schenectady, N.Y., 51 AD3d 1253, 1256 [2008], lv denied 11 NY3d 705 [2008]; Acton v Nalley, 38 AD3d 973, 976 [2007]). This analysis requires consideration of factors such as the nature and extent of the injuries, the degree of past, present and future pain and the permanency of the injury (see Garrison v Lapine, 72 AD3d 1441, 1443 [2010]).
Plaintiff contends that the relatively modest amount of the award for future pain and suffering indicates that the jury improperly disregarded Dixon’s medical testimony, which was the only expert evidence presented at trial (see Baker v Shepard, 276 AD2d 873, 875 [2000]; Prescott v LeBlanc, 247 AD2d 802, 803 [1998]). We disagree. In addition to finding that plaintiff was entitled to damages for future pain and suffering, the jury also awarded damages for future medical expenses in the approximate amount of Dixon’s estimate of the cost of tendon transfer surgery. It thus appears that the jury accepted Dixon’s medical opinion that plaintiff’s pain would not resolve on its own and that the recommended tendon transfer surgery would eventually be necessary for this reason. Notably, Dixon did not testify that plaintiffs condition would grow progressively more painful if he did not undergo the surgery or that he would continue to experience significant pain if he did choose to do so; on the contrary, he described the tendon transfer surgery as “oftentimes over 90 percent successful” in addressing tendinosis pain such as that suffered by plaintiff. Based on this medical testimony, the jury could reasonably have determined that most or all of plaintiffs future discomfort would be alleviated by the surgery (see Britvan v Plaza at Latham, 266 AD2d 799, 800-801 [1999]).
Further, the jury was not required to credit plaintiffs description of the severity of his pain (see Vogel v Cichy, 53 AD3d at *1198 880) and could reasonably have found that his claims were inconsistent with his relatively high level of physical activity, failure to seek medical attention after 2007, other than a single visit to Dixon in 2010, and rejection of the surgical options offered by Dixon on that occasion.[2] 3****Dixon testified that he would not expect a person suffering Achilles tendinosis pain at the level reported by plaintiff to be able to play golf effectively. However, plaintiff testified that, although his injuries prevented him from regaining his preaccident high level of competitive golfing skill, he returned to playing recreational golf in 2006 and was playing two or three times monthly by 2007. Thereafter, he reduced the frequency of his golf games, but explained that he did so because of family demands on his time rather than pain. He acknowledged that he passed challenging golf ability tests in 2006 and 2009. Moreover, after June 2006, he worked as a golf professional, an athletically demanding endeavor that required long days of physical activity. By the time of trial, he had 700 students and was earning more than he had in construction. Plaintiff testified that he experienced burning pain in the area of the tendon rupture on a daily basis throughout this period, growing worse during physical activity or while playing golf, as well as occasional “sharp shooting pain” and episodes of limping. However, he also testified that he used over-the-counter medications or no medications at all to manage the discomfort, and that he sought no medical assistance for this pain during the three years following the second surgery, until an episode of unusually intense pain caused him to return to Dixon for the single visit in 2010.
“Deference is accorded both to a jury’s assessment of personal injury damages and to the trial court’s decision on a motion to set aside the jury’s verdict” (Felitti v Daughriety, 12 AD3d 909, 910 [2004] [citations omitted]). Upon our review of awards of damages for future pain and suffering in comparable cases involving injuries to the foot or ankle,[3] “we are not persuaded that the record evidence preponderates so greatly in [plaintiffs] favor that the jury could not have reached its conclusion on any fair interpretation of the evidence” (Starr v Cambridge Green Homeowners Assn., 300 AD2d 779, 782 [2002]; see McNeil v MCST Preferred Transp. Co., 301 AD2d 579, 579-580 [2003] *1199 [$40,000 award for future pain and suffering after ankle injury-reduced to $15,000 where the plaintiff suffered occasional pain, could not participate in certain sports and had returned to work]; Britvan v Plaza at Latham, 266 AD2d at 800-801 [$5,000 for future pain and suffering where surgery was expected to resolve foot pain]; Lepore v City of New York, 258 AD 2d 288, 288 [1999] [$10,000 for future pain and suffering following trimalleolar ankle fracture]; Seargent v Berben, 235 AD2d 1024, 1026 [1997] [$16,000 for future pain and suffering following ankle fracture where the plaintiff was able to work and managed pain with Motrin]; see also Petrilli v Federated Dept. Stores, Inc., 40 AD3d 1339, 1343-1344 [2007] [$100,000 is reasonable compensation for future pain and suffering resulting from injured ankle tendon as well as injuries to arm, wrist, back, neck and shoulder]; Sherry v North Colonie Cent. School Dist., 39 AD3d 986, 988 [2007] [jury awarded $50,000 for future pain and suffering following ankle fracture with consequent bursitis and post-traumatic arthritis]; Mihalko v Regnaiere, 36 AD3d 983, 984 [2007] [trial court increased award to $50,000 for future pain and suffering following ankle injury]).
Stein, J.P., Spain and Egan Jr., JJ., concur. Ordered that the order is affirmed, with costs.

. Dixon testified that the tarsal coalition was an abnormal growth of bone, cartilage and fibrous tissue that had been present since birth but did not become symptomatic and painful until after it was injured in the construction accident.

. Plaintiff testified that he chose to defer surgery because of his work and family obligations.

. There is scant appellate case law involving the precise injury plaintiff suffered, a ruptured Achilles tendon. One recent case from the Second Department was limited to past pain and suffering, with an award of $450,000, and contained no detail regarding these damages (Kouho v Trump Vil. Section 4, Inc., 93 AD3d 761 [2012]).