■ KENNETH O. MYERS, Respondent-Appellant, v NANCY E. MYERS, Appellant-Respondent. [680 NYS2d 690] —Spain, J. Cross

appeals from a judgment of the Supreme Court (Reilly, Jr., J.) ordering, *inter alia,* equitable distribution of the parties' marital property, entered August 5, 1996 in Schenectady County, upon a decision of the court.

The parties were married in 1970; they met when plaintiff was employed as a driver by defendant's parents in the family heating oil business, H & M Oil Company. The parties have two children, a son born in 1971 and a daughter born in 1973. During the course of their marriage, the parties amassed numerous assets, including H & M Oil, which operated its business in the City of Schenectady, Schenectady County. The parties also acquired several parcels of real property, including the marital residence, vacation properties, rental properties and a 50% interest in a real estate development known as Lori Meadows. They also accumulated considerable savings and investments. Plaintiff commenced this action in 1989 seeking a divorce on the grounds of cruel and inhuman treatment, constructive abandonment and adultery. Defendant counterclaimed for divorce on the grounds of cruel and inhuman treatment and adultery. After a nonjury trial, Supreme Court, *inter alia,* dismissed defendant's counterclaims, granted plaintiff a judgement of divorce based on cruel and inhuman treatment and made a distribution of the parties' property. Defendant appeals and plaintiff cross-appeals.

Initially, we reject defendant's contention that Supreme Court improperly limited her testimony seeking to establish her counterclaim for divorce on grounds of cruel and inhuman treatment and adultery, especially in light of that court's broad discretion to determine whether a divorce based on cruel and inhuman treatment is warranted (*see, Forcucci v Forcucci,* 96 AD2d 751), the heightened standard for establishing such grounds in a marriage of long duration (*see, Brady v Brady,* 64 NY2d 339, 343) and the deference given the trial court where issues of credibility arise (*see, Blaise v Blaise,* 241 AD2d 680; *Hunt v Hunt,* 222 AD2d 759). As to the issue of defendant's attempt to prove adultery on the part of plaintiff, the fact that Supreme Court sustained objections to defendant's cross-examination of plaintiff about an order of paternity, apparently on the ground that such questioning was beyond the scope of direct examination, did not preclude defendant from questioning plaintiff and offering other evidence, if any, during defendant's direct case. Accordingly, the court did not err in dismissing defendant's counterclaim for lack of proof.

We next reject defendant's assertion that Supreme Court erred in precluding the testimony of most of her expert wit-

nesses on the issue of the value of the business. Considering plaintiff's timely demand for disclosure, defendant's 11th-hour notice of expert witnesses and the court's broad discretion in managing pretrial discovery (*see, Karney v Arnot-Ogden Mem. Hosp.*, 251 AD2d 780), we conclude that Supreme Court did not abuse its discretion in precluding the testimony of three out of defendant's four proposed experts (*see*, CPLR 3101 [d] [1] [i]; *Karney v Arnot-Ogden Mem. Hosp., supra*, at 784; *Douglass v St. Joseph's Hosp.*, 246 AD2d 695, 696-697; *Ingleston v Francis*, 206 AD2d 745).

We also reject defendant's contention that Supreme Court improperly set the valuation date of H & M Oil as the date of commencement of this action. In its decision, Supreme Court provided a sound basis for its choice of dates and, most notably, neither party presented any proof of the value of the family business as of the date of trial. Given the discretion of the court in establishing the valuation date of assets (*see*, Domestic Relations Law § 236 [B] [4] [b]), Supreme Court did not err in choosing the date of commencement. However, we find no precedent or logic to support the court's conclusion that marital fault is an appropriate consideration in the selection of a valuation date.

Next, we agree with each of the parties that Supreme Court erred in computing the distribution of marital property, especially in light of the court's expressed intention to divide the marital assets equally. We first find merit in plaintiff's contention that Supreme Court should have applied a marketability discount in arriving at an ultimate value of H & M Oil, as the "risk associated with illiquidity of the shares" should be considered in the valuation of a closely held corporation (*Matter of Seagrott Floral Co. [Riccardi]*, 78 NY2d 439, 446; *see, Sommer v Sommer*, 176 AD2d 1022, 1024). Upon our review of the record we find ample support for the opinion by plaintiff's expert that the value of the family business, as a closely held corporation, should be discounted because of the relatively limited market for a closely held corporation.

The amount of the discount, if any, usually depends on the circumstances. We are also persuaded by the testimony of plaintiff's expert that a discount of 25%, a percentage for which there is ample precedent, is appropriate (*see, e.g., Matter of Seagrott Floral Co. [Riccardi], supra*, at 443; *Kalisch v Kalisch*, 184 AD2d 751, 753; *Matter of Joy Wholesale Sundries*, 125 AD2d 310, 311; *Matter of Blake v Blake Agency*, 107 AD2d 139, 149, *lv denied* 65 NY2d 609; *Matter of Fleischer*, 107 AD2d 97, 101). Notably, plaintiff's expert took the "active market" for

home heating oil businesses into consideration and suggested that a discount higher than 25% would not be justified. Given the extensive record before this Court, including evidence and testimony regarding the value of the business, we find no need to remit this matter to Supreme Court (*see, Maczek v Maczek,* 248 AD2d 835, 837-838; *DeMarco v DeMarco,* 235 AD2d 1014). Accordingly, the value of H & M Oil should be reduced to $350,117 (Supreme Court's valuation of $466,823 less $116,706 [25%]). We find unavailing defendant's argument that Supreme Court erred in its consideration of the liability of H & M Oil resulting from the postcommencement discovery of a petroleum discharge at one of its properties (*see, McSparron v McSparron,* 87 NY2d 275, 288).

Next, although we agree with Supreme Court that Lori Meadows is marital property, we find merit in both parties' assertions that the court erred in its calculation of their respective share of the proceeds of said development which was sold by plaintiff and his business partner for the net sum, after closing costs, of $911,049 (each parties' 50% share was $455,524). The capital gains tax paid by the parties was $109,511,* resulting in the net proceeds of the sale of $346,013. Applying Supreme Court's "separate property credit", representing "plaintiff's postcommencement efforts and risk assumption" of $31,503 (plaintiff's share or 50% of the $63,006 in costs attributable to the business partners' postcommencement efforts), results in a total of $314,510 available for equitable distribution. Accordingly, an equal division of said sum results in a share to defendant of $157,255, not the $120,596 awarded by Supreme Court.

Lori Meadows Summary

| | |
|---|---|
| Parties' Share at Closing ............... | $ 455,524 |
| Capital Gains Tax ...................... | - 109,511 |
| | $346,013 |
| Less "Separate Property Credit" to Plaintiff (50% of $63,006) .............. | - 31,503 |
| | $ 314,510 |
| Defendant's 50% Share | =$ 157,255 |

We will adjust Supreme Court's calculations accordingly. Plaintiff's assertion that he is entitled to a 75% distribution of the Lori Meadows proceeds is without merit.

---

* A chart in evidence as plaintiff's exhibit No. 20 and the parties' 1990 tax return confirm plaintiff's testimony that the capital gains tax on the reported capital gain of $304,198 was $109,511 (36% of $304,198).

It is also evident, upon our review of the record, that Supreme Court overlooked a parcel referred to as the "Mariaville Lake Property", a vacant lot with a stipulated value of $18,000. In accordance with the framework of Supreme Court's stated goals, the parcel should have been included in the final distribution to defendant and plaintiff shall execute an appropriate deed and transfer his right, title and interest to defendant.

After a careful review of the record, we also conclude that Supreme Court properly identified and determined the value of all liquid marital accounts as of the date of commencement; additionally, we find no error in the court's distribution of said liquid marital assets nor in the distributive award to defendant arising out of the equal division of said funds.

Based upon the foregoing, the marital estate distribution is hereby modified in the following manner:

| To Plaintiff | To Defendant | |
|---|---|---|
| H & M Oil | $ | 350,117 |
| Ft. Hunter Road | | 53,000 |
| Myron Street | | 120,000 |
| Jackson Avenue | | 125,000 |
| Mariaville Camp | | 55,000 |
| Sacandaga Camp | | 55,000 |
| Eastholm Road | | 58,000 |
| Mariaville Lake Property | | 18,000 |
| Totals | $ | 403,117 |
| | + $ | 431,000 |
| Combined nonliquid marital assets (as listed above) | = $ | 834,117 |
| Each parties' share (50%) | = $ | 417,058 |

Computation of Additional Distributive Award to Defendant
Arising Out of Distribution of Proceeds from Lori Meadows

| | | |
|---|---|---|
| Proceeds from Lori Meadows (defendant's share) | $ | 157,255 |
| Adjustment from above calculations | | 417,058 |

| | |
|---|---|
| Plaintiff's 50% share | - 403,117 |
| Property to plaintiff | - 13,941 |

| | |
|---|---|
| Additional distributive award to defendant arising out of non-liquid marital assets | $ 143,314 |

Accordingly, in furtherance of dividing the marital assets equally, defendant shall receive an additional distributive award arising from the distribution of all nonliquid marital assets in the amount of $143,314, of which $43,314 shall be paid by plaintiff within 60 days of the date of this memorandum and order and the balance shall be paid in two equal payments of $50,000 at yearly intervals, the first of which payment shall be one year from said date; said sum will be in addition to any sums payable to defendant according to the judgment of Supreme Court.

We further conclude that Supreme Court properly credited defendant for her separate property in the amount of $10,000 representing the money she invested in the parties' cash purchase of their first marital dwelling (*see, Zurner v Zurner*, 213 AD2d 906, 908, *lv denied* 87 NY2d 802). In our view, defendant's investment did not lose its character as separate and traceable funds when the marital residence was subsequently mortgaged and the proceeds of the mortgage invested in the parties' purchase of the Jackson Avenue investment property in 1974 (*see, id.*, at 908). Plaintiff's reliance on our holding in *Dunn v Dunn* (224 AD2d 888) is unavailing; there, unlike here, the proceeds of the sale of the second marital residence were deposited in a joint bank account, thereby losing their separate identity. However, in light of the fact that the Jackson Avenue property has already been distributed to defendant, the value of which includes a 50% share of defendant's separate property, we conclude that defendant is entitled to a separate award of $5,000. Accordingly, defendant is awarded $5,000 representing said separate property interest; said sum shall be paid by plaintiff within 60 days of the date of this memorandum and order.

Next, we reject plaintiff's assertion that Supreme Court erred in awarding defendant maintenance. The determination to award maintenance and the amount set are committed to the sound discretion of the trial court (*see, Hartog v Hartog*, 85 NY2d 36; *Newton v Newton*, 246 AD2d 765, 766, *lv denied* 91 NY2d 813; *Zurner v Zurner, supra*, at 907; *Dawson v Dawson*, 152 AD2d 717, 720). In setting the amount and duration of maintenance a court is required to consider a number of statu-

tory factors (*see*, Domestic Relations Law § 236 [B] [6] [a]) and marital fault is a relevant factor (*see*, *Zurner v Zurner*, *supra*; *Nolan v Nolan*, 107 AD2d 190; *see also*, Domestic Relations Law § 236 [B] [6] [a] [11]). However, marital fault does not preclude an award of maintenance (*see*, *e.g.*, *Newton v Newton*, *supra*, at 767-768).

Here, Supreme Court determined that defendant's earning capacity was not sufficient to support her and awarded maintenance in the amount of $125 per week for seven years and $100 per week thereafter, until she reaches the age of 62. The court considered the duration of the marriage, defendant's contributions to the marriage as "spouse, parent and home-maker", the age of the parties, the parties' standard of living during the marriage and plaintiff's ability to contribute to defendant's support. The court also considered defendant's marital fault, appropriately finding it relevant to the determination of the maintenance award but, nonetheless, still awarding maintenance. In our view, the court properly awarded maintenance considering all the necessary statutory factors (*see*, Domestic Relations Law § 236 [B] [6] [a]).

We have considered each of the parties' remaining contentions, including defendant's argument that Domestic Relations Law § 236 (B) (6) (c) violates defendant's right to equal protection (*see*, *e.g.*, *Matter of Riconda*, 90 NY2d 733, 736), and find them to be without merit.

Mercure, J. P., Yesawich Jr., Peters and Graffeo, JJ., concur. Ordered that the judgment is modified, on the law and the facts, without costs, by (1) valuing H & M Oil Company at $350,117, (2) valuing defendant's interest in the proceeds of Lori Meadows at $157,255, (3) awarding defendant $5,000 representing her separate and traceable property interest in the Jackson Avenue property, (4) including the Mariaville Lake Property among the parcels of real estate distributed to defendant with a value of $18,000, and (5) increasing defendant's distributive award, to cover the equal distribution of all nonliquid marital assets, by the sum of $143,314, to be paid by plaintiff in accordance with this Court's decision; and, as so modified, affirmed.