■ KEVIN F. SHORTIS, Appellant, v GLORIA J. SHORTIS, Respondent. [711 NYS2d 578] —Lahtinen, J. Appeal from an order of the Supreme Court (Connor, J.), *inter alia,* denying plaintiff a divorce, entered May 27, 1999 in Rensselaer County, upon a decision of the court.

The parties were married in 1986 and have one child, a son born in 1992. Plaintiff moved out of the marital residence in October 1995. In January 1996 the parties were granted joint legal custody of their son by Family Court, with plaintiff receiving primary physical custody. In April 1997 plaintiff commenced this action for divorce alleging cruel and inhuman treatment and constructive abandonment. In a written decision and order after the second nonjury trial,[1] Supreme Court granted defendant's motion to dismiss the complaint based on plaintiff's failure to prove cruel and inhuman treatment or constructive abandonment finding that "[d]efendant has not abandoned the [p]laintiff actually or constructively and she has not been cruel and inhuman towards the [p]laintiff". Supreme Court awarded defendant maintenance of $150 per week retroactive to the date of the commencement of this action, the arrears to be paid by payment of an additional $150 per month until paid in full, awarded the parties joint custody of their son, directed that all questions of child support be in compliance with the "Uniform Child Support Standards Act" and denied plaintiff possession of the marital residence. Plaintiff appeals.

In an action for divorce based on cruel and inhuman treatment, the party seeking the divorce must establish that the other party's conduct so threatened his or her physical or

---

1. The Trial Judge presiding at the first nonjury trial retired while the case was *sub judice.*

mental well-being that it would be unsafe or improper to continue to cohabit with the offending party (*see, Bailey v Bailey*, 256 AD2d 1030). Supreme Court is accorded broad discretion in determining whether the acts complained of constitute cruel and inhuman treatment and, as the trier of fact, its determination will not be lightly upset on appeal (*see, id.*, at 1030; *Gray v Gray*, 245 AD2d 584, 585; *Gaudette v Gaudette*, 234 AD2d 619, 622, *appeal dismissed* 89 NY2d 1023) and deference is to be accorded the trial court on issues of credibility (*see, Myers v Myers*, 255 AD2d 711, 712; *Newkirk v Newkirk*, 212 AD2d 951, 952).

Plaintiff's proof of cruel and inhuman treatment consisted solely of his own testimony. Plaintiff testified that the marital residence was disorganized and unkempt, with used paper towels, boxes and bags piled everywhere to the point that a person could not differentiate between the rooms and often could not see any floor space. When he attempted to clean the marital residence defendant threatened to "slit his throat" while he slept, causing him to move out of the marital residence the next day. Plaintiff also testified, without objection or contradiction, that after leaving the marital residence in October 1995 he obtained physical custody of their son upon the suggestion of the Department of Social Services after their investigation of the condition of the marital residence.

Plaintiff also described an incident in February 1997 in a local hotel parking lot when he brought their son to the agreed-upon meeting place for his visitation with defendant and she put her hands on his throat and applied pressure, causing him to feel threatened. However, plaintiff took no immediate action after either of these incidents. He remained overnight in the marital residence after defendant's threat to slit his throat and did not seek either an order of protection or modification of the visitation order after the February 1997 incident. Upon cross-examination plaintiff admitted that he was physically larger and stronger than defendant and that he never became ill, never sought medical treatment or medications, never sought psychological or psychiatric counseling or court intervention as a result of the condition of the marital residence or either of the threats of physical harm made by defendant.[2]

This being a long-term (11-year) marriage with a child when this action was commenced (*see, Newkirk v Newkirk, supra*, at 951; *cf., Israel v Israel*, 242 AD2d 891), the transgressions constituting the cruel and inhuman treatment must withstand

2. Plaintiff did receive a temporary order of protection as a result of an undescribed incident subsequent to commencement of this divorce action.

a heightened scrutiny (*see, Brady v Brady*, 64 NY2d 339, 343) and be viewed within the scope of the entire marriage (*see, Newkirk v Newkirk, supra*, at 952). We have held that collecting junk and storing it in and around the marital residence causing deplorable living conditions does not amount to cruel and inhuman treatment (*see, Wilson v Wilson*, 244 AD2d 646). We note that while we have held that lack of medical proof may not be fatal to a claim for cruel and inhuman treatment (*see, Allwell v Allwell*, 252 AD2d 683, 685), it is relevant to a determination of the sufficiency of the proof (*see, Mikhail v Mikhail*, 252 AD2d 772). On this record we concur with Supreme Court that the proof fails to sustain a cause of action for cruel and inhuman treatment.

We reach a similar conclusion with regard to plaintiff's cause of action based on constructive abandonment, premised on his claim that defendant unjustifiably refused sexual relations with him for a period of 18 months. Supreme Court found that the parties had not been sleeping together for approximately a year prior to plaintiff's leaving the marital residence, but that it was not clear from the proof when they last had sexual relations or which party had refused to have them. Plaintiff's failure to establish by competent proof repeated requests by him for resumption of conjugal relations is fatal to his claim of constructive abandonment (*see, Murphy v Murphy*, 257 AD2d 798, 798-799; *Silver v Silver*, 253 AD2d 756, 757) and, as we found in *Murphy v Murphy* (*supra*), by maintaining separate sleeping areas plaintiff may have impliedly consented to a sex-limited relationship.

Plaintiff next challenges Supreme Court's award of $150 per week to defendant for spousal maintenance. Plaintiff claims that the award of maintenance is not warranted by the proof and that Supreme Court also erred (1) in determining the lifetime duration of the award, (2) in holding that the maintenance award was retroactive to the date of commencement of plaintiff's action for divorce, and (3) by failing to credit him for the full amount of the mortgage payments on the marital residence he paid from October 1997 to the date of trial.

"The determination to award maintenance and the amount set are committed to the sound discretion of the trial court" (*Myers v Myers*, 255 AD2d 711, 716, *supra* [citations omitted]; *see, Hartog v Hartog*, 85 NY2d 36; *see also, Lombardo v Lombardo*, 255 AD2d 653, 654). A court is required to consider the statutory factors set forth in Domestic Relations Law § 236 (B) (6) (a) (*see, Mulverhill v Mulverhill*, 268 AD2d 948), including the parties' marital standard of living (*see, Hartog v Hartog, supra*, at 50-51).

The record reveals documentary evidence of plaintiff's income and his testimony regarding such statutory factors as his work history, health and financial situation. He currently has physical custody of the parties' son and there was no proof of any child support being paid by defendant. At the time the parties separated they earned approximately the same annual wage, between $27,000 and $29,000. Defendant testified that she was fired from her job with the Department of Taxation and Finance in October 1997, currently worked for close to minimum wage at a local Burger King restaurant, had an Associate's degree from a local community college and had worked various types of jobs all her life. Defendant also testified that she applied for and was awarded Supplemental Security Income benefits from the Social Security Administration but refused to accept them. The record lacks any documentary proof of this award, including the amount or basis for the award.

Defendant failed to provide a statement of net worth (*see,* Domestic Relations Law § 236 [B] [4]) from which information could be gleaned regarding her financial situation, including her income and assets, nor any documentary or other medical proof of what Supreme Court described as her "possible dysfunction" and "possible mental illness", which may be relevant to her ability to earn a living (*see,* Domestic Relations Law § 236 [B] [6] [a] [3], [4]). Analysis of the record in light of other statutory factors reveals a lack of proof regarding her assets, her ability to be self-supporting, including the need for career training, her mental and physical health, her nonmonetary contributions to the marriage and to plaintiff's career, all of which could have been employed by Supreme Court to make a reasoned analysis of her need for maintenance (*see, Nielson v Nielson,* 259 AD2d 916, 917). The lack of this proof precludes this Court from exercising our factual review power to determine the maintenance issue (*cf., Allen v Allen,* 263 AD2d 691, 692) and requires our reversal of Supreme Court's maintenance award and denial of defendant's request for maintenance.

Supreme Court's judgment addressed the issue of custody and support for the parties' son[3] and we find no reason to disturb those findings, nor that court's refusal to award plaintiff exclusive possession of the marital residence.

Crew III, J. P., Peters, Mugglin and Rose, JJ., concur.

---

3. The supplemental record on appeal contains a December 1, 1999 order of Supreme Court referring the issues of custody and support to Family Court.

Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as awarded defendant $150 per week spousal maintenance retroactive to the commencement of this action; defendant's request for maintenance is denied; and, as so modified, affirmed.