■ CHRISTINE FREAS, Respondent, v ROGER L. FREAS, Appellant. [822 NYS2d 798]—

Peters, J. Appeal from a judgment of the Supreme Court (O'Shea, J.), entered December 23, 2004 in Chemung County, granting plaintiff a divorce and ordering, inter alia, maintenance and counsel fees to plaintiff, upon a decision of the court.

The parties were married in October 1972 and have three emancipated children. Despite some initial difficulties, plaintiff described the parties' relationship as good until early 2000, at which time plaintiff temporarily moved out of the marital residence. The impetus for this move was defendant's alleged rela-

tionship with a female coworker. The marital relationship apparently continued to deteriorate, prompting plaintiff to permanently move out of the marital residence in July 2003.

Plaintiff commenced this action for divorce in September 2003 upon the ground of cruel and inhuman treatment. Following joinder of issue, Supreme Court conducted a brief nonjury trial, consisting of testimony from plaintiff, defendant and his alleged paramour. Although defendant moved to dismiss at the close of plaintiff's case based upon insufficient proof, Supreme Court ultimately granted plaintiff the requested divorce and awarded her, among other things, maintenance and counsel fees. This appeal by defendant ensued.

It is by now well settled that Supreme Court is vested with broad discretion in determining whether a spouse's conduct constitutes cruel and inhuman treatment (*see Xiaokang Xu v Xiaoling Shirley He*, 24 AD3d 862, 863 [2005], *lv denied* 6 NY3d 710 [2006]; *Conrad v Conrad*, 16 AD3d 794, 795 [2005]; *Delliveneri v Delliveneri*, 274 AD2d 798, 798 [2000], *lv denied* 95 NY2d 767 [2000]). As the trier of fact, it is in the best position to gauge the demeanor and credibility of witnesses, warranting its findings of credibility to be entitled to great deference (*see Shortis v Shortis*, 274 AD2d 880, 881 [2000]; *Myers v Myers*, 255 AD2d 711, 712 [1998]; *Newkirk v Newkirk*, 212 AD2d 951, 952 [1995]). These determinations shall not be overturned lightly on appeal (*see Xiaokang Xu v Xiaoling Shirley He, supra* at 863; *Conrad v Conrad, supra* at 795; *Delliveneri v Delliveneri, supra* at 798).

Here, Supreme Court presided over this nonjury trial where it heard undisputed testimony from plaintiff regarding both the treatment that she endured from defendant, as well as her reasons for suspecting an extramarital affair. The court noted that "defendant's lack of communication, isolation, name calling, controlling behavior and refusal to end his 'friendship' with [the alleged paramour] and to attend marriage counseling are all acts which demonstrate that continued cohabitation is improper." Significantly, Supreme Court credited plaintiff's testimony that defendant's conduct caused her to increase her antidepressant medication and, ultimately, vacate the marital residence. In addition, it reviewed the testimony of defendant's alleged paramour, as well as that propounded by defendant which was limited to his employment and financial information. From the totality of the testimony, Supreme Court found defendant's conduct to amount to a "systematic pattern of emotional neglect." Having carefully set forth, in a lengthy decision, each and every basis to support its ultimate conclusion

that continued cohabitation with defendant would be unsafe, we respect the deference accorded to Supreme Court and its decision that defendant's conduct constituted cruel and inhuman treatment.

Nor do we find an abuse of discretion in the award of maintenance. Fully acknowledging the factors set forth in Domestic Relations Law § 236 (B) (6) (a), Supreme Court relied upon testimony establishing the reasons underlying both the disparate incomes between the parties and their future earning potential. Plaintiff stayed home, upon mutual agreement, to care for the children from 1974 until 1991 and, although she rejoined the work force in 1994, she stopped because of the injuries that she sustained in a car accident. By the time of trial, she was working part time, seeking full-time employment, which would yield an estimated income of approximately $17,000 per year. Defendant was grossing over $57,000 in 2002, decreasing to $38,891 at the time of trial because of a voluntary change in his work shift. Having studied welding, electric work and machine work, he also testified that he receives additional income from odd jobs that he performs outside of his full-time employment.

In light of the disparity in income and the parties' future earning capacity, there is no abuse of discretion in the award of $450 per month in maintenance to plaintiff until she reaches the age of 62 (*see Shortis v Shortis, supra* at 882). In so finding, we note that Supreme Court did not need to consider each and every statutory factor in determining that award (*see Wheeler v Wheeler,* 12 AD3d 982, 983 [2004]).

As to the award of counsel fees, a determination left to the sound discretion of the trial court (*see Nelson v Nelson,* 290 AD2d 826, 828 [2002]; *Strang v Strang,* 222 AD2d 975, 979 [1995]), we again find no error. The total of $3,000 awarded, $2,000 after trial and $1,000 for interim fees from the pendente lite order, was entirely reasonable considering the disparate financial circumstances of the parties.

Cardona, P.J., and Spain, J., concur.

Crew III, J. (dissenting). While the majority correctly observes that the trial court is vested with considerable discretion in determining whether a spouse's conduct rises to the level of cruel and inhuman treatment (*see Conrad v Conrad,* 16 AD3d 794, 795 [2005]), application of the relevant case law nonetheless leads us to conclude that plaintiff's proof fell short of the mark here. Accordingly, we respectfully dissent.

"An action for divorce may be maintained on the grounds of 'cruel and inhuman treatment of the plaintiff by the defendant

such that the conduct of the defendant so endangers the physical or mental well being of the plaintiff as renders it unsafe or improper for the plaintiff to cohabit with the defendant' " (*id.* at 794, quoting Domestic Relations Law § 170 [1]; *see Redgrave v Redgrave,* 304 AD2d 1062, 1063 [2003]). Where, as here, the marriage is of long duration, a high degree of proof of cruel and inhuman treatment is mandated (*see Xiaokang Xu v Xiaoling Shirley He,* 24 AD3d 862, 863 [2005], *lv denied* 6 NY3d 710 [2006]; *Pfoltzer v Morris-Pfoltzer,* 9 AD3d 615, 616 [2004]). Such a showing, in turn, requires "something more than 'mere incompatibility' and 'serious misconduct [must] be distinguished from trivial' " (*Omahen v Omahen,* 289 AD2d 890, 891 [2001], *lv denied* 97 NY2d 613 [2002], quoting *Hessen v Hessen,* 33 NY2d 406, 410 [1974]). Stated another way, simply demonstrating irreconcilable differences or the existence of a "dead" marriage is insufficient to establish cruel and inhuman treatment (*see Jacob v Jacob,* 8 AD3d 725, 726 [2004]; *William MM. v Kathleen MM.,* 203 AD2d 883, 884 [1994]). Rather, cruelty in this context " 'implies wantonness or the intent to inflict suffering or conduct of such character as to seriously affect or impair the health of a spouse as to render cohabitation unsafe or improper. A plaintiff is, therefore, required to show a pattern of actual physical violence or other conduct which seriously affected the plaintiff's health, making further cohabitation unsafe' " (*Wilson v Wilson,* 244 AD2d 646, 647 [1997], quoting Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law C170:3, at 594-595 [1988 ed] [now page 397 in 1999 ed]).

When asked at trial why she left the marital residence, plaintiff responded, "I just didn't want to live like this anymore. Um, we didn't communicate anymore. I didn't trust him anymore. Um, and I just wanted to start a life on my own. My children were grown, and [I] thought it was time I led my own life." As to defendant's specific transgressions, plaintiff testified that defendant was distant and cold and that he "closed himself off" from her by coming home from work and going to his room. The parties argued approximately twice a month during the period of marital discord and during the course of such arguments, defendant sometimes called plaintiff a "jealous bitch" and "stupid." Plaintiff also testified that defendant was not interested in attending marriage counseling, that he refused to discuss their financial affairs with her and that he purchased a new vehicle without telling her. Although the crux of the parties' difficulties apparently stemmed from defendant's allegedly romantic relationship with a female coworker, who admittedly expressed a romantic interest in defendant, the coworker testi-

fied at trial that she and defendant never engaged in sexual relations and that despite her repeated pleas, defendant informed her that they could never be more than friends because he had no intention of leaving plaintiff. Similarly, the coworker testified that although she, defendant and other individuals from work would go out for a drink after work approximately once a month, she did not socialize with defendant on her own. All of this, plaintiff contended, exacerbated her depression and resulted in her treating physician increasing her dose of Prozac.

While the foregoing testimony plainly establishes that the parties had an unhappy marriage, this Court has held that "merely unpleasant conduct, such as name calling or a cold, uncommunicative and unsympathetic manner, does not of itself constitute cruel and inhuman treatment within the purview of Domestic Relations Law § 170 (1)" (*Omahen v Omahen, supra* at 892). Hence, in our view, defendant's cold and distant manner does not afford plaintiff a basis for relief. As for defendant's control of the parties' finances, a close review of plaintiff's testimony reveals that defendant had managed their finances throughout their marriage, providing plaintiff with a household allowance each week. Thus, the mere fact that defendant would not discuss their finances with plaintiff does not constitute a departure from prior established behavior. Similarly, while proof of an extramarital affair indeed provides a sufficient ground upon which to grant a divorce based upon cruel and inhuman treatment (*see Gentner v Gentner*, 289 AD2d 886, 887 [2001]), there is no proof that defendant engaged in an extramarital affair here. Finally, as for the alleged exacerbation of plaintiff's existing depression, the record reveals that plaintiff had been on antidepressants since 1995 as the result of an automobile accident, and the medical evidence contained in the record does not establish a correlation between the parties' marital discord and plaintiff's purported need for increased medication. While this absence of proof is not fatal to plaintiff's claim, it nonetheless is a factor to be considered (*see Delliveneri v Delliveneri*, 274 AD2d 798, 799 [2000], *lv denied* 95 NY2d 767 [2000]).

In short, based upon our review of the record as a whole, we are of the opinion that the proof adduced at trial is insufficient to warrant a divorce upon the ground of cruel and inhuman treatment (*compare Holmes v Holmes*, 25 AD3d 931 [2006] [the defendant abused alcohol and crack cocaine, was repeatedly admitted to rehabilitation facilities and pursued and rammed into the plaintiff's automobile]; *Delliveneri v Delliveneri, supra* [the defendant was an alcoholic, was addicted to pain medication, had four driving-related arrests and convictions, was

incarcerated for 10 months, lost his job and exposed the plaintiff to a sexually transmitted disease]; *Gasiorowski v Gasiorowski*, 267 AD2d 557 [1999], *lv denied* 94 NY2d 762 [2000] [the defendant physically abused the plaintiff, subjected the plaintiff to psychological abuse and spit on her]; *Bailey v Bailey*, 256 AD2d 1030 [1998] [the defendant physically assaulted the plaintiff, threatened to kill her and/or commit suicide, engaged in threatening behavior and refused to bathe]). Accordingly, we would reverse the underlying judgment of divorce. In light of this conclusion, we need not reach the remaining issues raised by defendant.

Mugglin, J., concurs. Ordered that the judgment is affirmed, without costs.