■ In the Matter of ROBIN J. YARINSKY, Respondent-Appellant, v STEVEN YARINSKY, Appellant-Respondent. (And Two Other Related Proceedings.) [829 NYS2d 710]—

Spain, J. (1) Cross appeals from an order of the Family Court of Saratoga County (Abramson, J.), entered November 2, 2005, which, inter alia, granted petitioner's application, in a proceeding pursuant to Family Court Act article 4, to direct respondent to pay child and spousal support, and (2) appeal from an order of said court, entered March 9, 2006, which granted petitioner's motion for an award of counsel fees.

The parties were married in October 1985 and have seven children, one of whom is now emancipated. In December 1998, respondent (hereinafter the husband), a physician, incorporated his successful plastic surgery practice as a subchapter S corporation, for which he is the sole shareholder. The parties separated in 1999 and a temporary order of custody was issued in Family Court by which they were to spend equal amounts of time with each of their children, and petitioner (hereinafter the wife) petitioned for child and spousal support. In April 1999, Family Court (Hall, J.) issued a temporary support order requiring the husband to pay—on a monthly basis—child support of $10,000 and spousal support of $1,000.

In May 1999, the wife filed for divorce and all issues regarding support were consolidated in Supreme Court (Scarano, Jr., J.). Subsequently, the husband successfully moved to dismiss the divorce action. However, in its dismissal order the court also granted, among other things, a money judgment against the husband for arrearages in child and spousal support, continued the temporary support order and referred matters regarding support back to Family Court.* On the husband's appeal of those latter portions of the dismissal order, this Court left intact the husband's obligations under the temporary support order including arrearages, and referred final issues of support to Family Court to be "resolved expeditiously" at a full support hearing (*Yarinsky v Yarinsky*, 2 AD3d 1108, 1110 [2003]). Meanwhile, in 2002, the husband's corporation filed for chapter 11 bankruptcy and, pursuant to the resulting bankruptcy plan, his yearly W-2 income from his corporation was assessed at approximately $150,000.

In January 2004, a hearing was commenced in Family Court on the support issues, resulting in an order by the Support

---

* The wife did not appeal and there is no record evidence that any new divorce action has been commenced in Supreme Court by either party. Supreme Court, in an order entered February 18, 2005, awarded $20,000 in counsel fees to the wife. On appeals by both parties, this Court affirmed that order (25 AD3d 1042, 1043 [2006]).

Magistrate which, based on the disparate incomes of the parties, required the husband to pay 80% of all of the children's expenses and required the wife to pay 20%. The Support Magistrate also ordered the husband to pay monthly child support of $4,491 and monthly spousal support of $1,500, and denied the requests of both parties for counsel fees; finding that the husband's violation of the temporary support order was not willful, the court denied the wife's petition to hold him in contempt. Both parties then filed objections to the Support Magistrate's order, although only the wife specifically objected to the denial of counsel fees.

In a November 2005 order, Family Court upheld, among other things, the Support Magistrate's findings regarding the parties' income and the amount of support that the husband should pay. The court also found, however, that the parties' requests for counsel fees had been erroneously denied as those issues had not been "thoroughly addressed at the trial"; after its own evidentiary hearing, the court issued its March 2006 order which determined that while the wife had incurred in excess of $40,000 in counsel fees, only $10,000 was justified as fair and reasonable, of which the husband should pay $8,000, a pro-rated 80% of the court's assessment.

The husband appealed from Family Court's November 2005 order and the wife cross-appealed. The wife also appealed from Family Court's March 2006 order, claiming that the award of counsel fees was inadequate and that the husband's counsel should have been sanctioned for frivolous behavior. This Court consolidated all of the pending appeals.

Turning first to Family Court's child support award, we note that traditionally, courts have considerable discretion in fashioning a child support award; when assessing a parent's income from which to determine his or her child support obligation, a court should consider factors such as the parent's "gross (total) income as . . . reported in the most recent federal income tax return" (Family Ct Act § 413 [1] [b] [5] [i]), as well as additional income from sources other than employment (see Family Ct Act § 413 [1] [b] [5] [iv]) and a parent's past income (see Callen v Callen, 287 AD2d 818, 819 [2001]). Further, a court may impute income based upon a parent's prior employment experience and future earning capacity in light of his or her educational background (see Carlson-Subik v Subik, 257 AD2d 859, 860 [1999]; Matter of Susan M. v Louis N., 206 AD2d 612, 613 [1994]; see also Matter of Bianchi v Breakell, 23 AD3d 947, 949 [2005]). Notably, when a party's or an expert's account of his or her finances is not believable, a court is justified in finding an

income higher than that claimed (*see Moffre v Moffre*, 29 AD3d 1149, 1150 [2006]; *Parise v Parise*, 13 AD3d 504, 505 [2004]; *Rohrs v Rohrs*, 297 AD2d 317, 318 [2002]).

Upon our review of the record, we conclude that the Support Magistrate acted within his discretion in focusing on the 2003 federal tax returns of the parties and the corporation, as they were the most recent at the time of the hearing (*see* Family Ct Act § 413 [1] [b] [5] [i]). Further, each item of income attributed to the husband for child support purposes—which totaled $189,547—is supported in the record and we reject the husband's arguments to the contrary. It is clear, however, that—in anticipation of an eventual full plenary hearing on child support—the husband made a number of financial decisions which effectively reduced the amount of the corporate nonemployment income received by him in 2003; the most glaring were his December 2003 decisions to purchase a new corporate vehicle for his personal use ($31,356) and to upgrade his office computer system ($15,070.16) thereby reducing the 2003 excess corporate profit—payable as income to him as sole shareholder of the corporation—by $46,426. Accordingly, we impute $40,426 in additional 2003 income to the husband's share of the combined parental income ($46,426 less the $6,000 already imputed by the Support Magistrate for the husband's use of the purchased vehicle), thereby fixing his 2003 income for child support purposes at $229,973 ($189,547 plus $40,426).

As to the wife's 2003 child support income, we conclude that the amount fixed by the Support Magistrate of $48,493 is amply supported in the record. The Support Magistrate properly deducted expenses from the wife's stated real estate business income and reduced her rental income by her mortgage payments and other carrying charges. We therefore conclude that the combined parental income should be $278,466, 83% of which is attributable to the husband.

Based upon the foregoing, the husband's basic child support obligation on the first $80,000 of parental income is $1,936.66 per month ($80,000 ÷ 12 × .35 × .83). As to the combined parental income in excess of $80,000, Family Ct Act § 413 (1) (c) (3) provides that the court shall establish the child support obligation to that excess by utilizing the "paragraph (f)" factors, by applying the statutory percentage to the full amount, or by a combination of the two (*see* Family Ct Act § 413 [1] [c] [3]; [1] [f]; *Matter of Cassano v Cassano*, 85 NY2d 649, 654-655 [1995]; *Matter of Mitchell v Mitchell*, 264 AD2d 535, 539 [1999], *lv denied* 94 NY2d 754 [1999]). Here, the Support Magistrate's decision sufficiently analyzed the relevant statutory factors (*see*

Family Ct Act § 413 [1] [f]) based upon eight days of testimony and a great deal of documentary evidence reflecting the husband's past income and his expansive future earning capacity. The Support Magistrate focused mainly on the great disparity between the parents' respective financial resources, their future earning potential and the children's special educational and emotional needs, together with the need to protect the children from a significant reduction in their standard of living. The Support Magistrate was not required to afford greater weight to the husband's visitation expenses as only the three youngest children regularly exercise visitation; moreover, his added expenses for such visitation were not shown to be "extraordinary" nor had the concomitant expenses of the wife been "substantially reduced" by the husband's involvement in the children's lives (Family Ct Act § 413 [1] [f] [9]).

While it is clear that an award of child support limited to the first $80,000 of parental income would be grossly inadequate in this case, upon our full review of the "paragraph (f)" factors as analyzed by the Support Magistrate, even with due consideration given to the conceded household needs of the wife as an additional factor (see Family Ct Act § 413 [1] [f] [10]), we further conclude that a child support award based upon the application of the child support percentage to the full amount of the combined parental income, as recalculated above ($278,466 ÷ 12 × .35 × .83 = $6,741 per month), would be "inappropriate" (Family Ct Act § 413 [1] [f]). Accordingly, based upon our consideration of all of the "paragraph (f)" factors, we establish the husband's share of the basic child support obligation at $6,016 per month, based upon a reduction in the husband's share of the combined parental income (for calculation purposes) to $200,000 ($248,493 ÷ 12 × .35 × .83). Additionally, upon the date that each child reaches the age of 21 or is otherwise emancipated, the adjusted amount of child support owed by the husband shall be determined based upon the application of the statutory child support percentages to the sum of $200,000 as established above.

In light of the adjustments made herein, the husband shall now be responsible for 83% and the wife 17% of each of the support add-ons as determined by the Support Magistrate, except that as the cost of health coverage increases, the wife's contribution towards health coverage shall increase in proportion to the rising cost so that her share continually constitutes 17%.

Turning next to the husband's challenge to the Support Magistrate's award of spousal support (see Family Ct Act § 412), the Support Magistrate reviewed the statutory factors (see Do-

mestic Relations Law § 236 [B] [6] [a]) in detail and found that, despite the wife's Master's degree in nursing and that she had recently developed a new career—albeit in the often volatile and erratic real estate business—she would not be able to meet her own needs in terms of achieving the extremely high standard of living established during the marriage. During the time leading up to the separation—to the detriment of a nursing career and her ability to become self-sufficient—the wife devoted her time and energy to the needs of the home and to their seven children (the youngest, at the time of the hearing, were seven-year-old twins). Thus, we cannot say, on the record before us, that the Support Magistrate's decision to award spousal support was an abuse of discretion. However, in our own application of the statutory factors to the facts in this case, we conclude that the reduced sum of $1,200 per month is a more appropriate amount, given the wife's conceded current needs and her income earning ability.

The Saratoga County Support Collection Unit shall adjust each of its child and spousal support calculations in light of the foregoing and advise the parties and Family Court of the adjusted amount of the total combined arrears; counsel for the wife shall promptly provide the Support Collection Unit with a copy of this decision.

Next, we reject the wife's assertion that it was error for Family Court and the Support Magistrate to find that the husband's violation of the temporary support order was not willful. According due deference to the Support Magistrate's findings based upon the evidence before him, including his assessment of credibility as to the husband's claims regarding his ability to make the required payments (*see Matter of Jimenez v Jimenez*, 222 AD2d 589, 590 [1995]), we will not disturb that determination.

We likewise conclude that the record fully supports Family Court's decision, after a full hearing, that only $10,000 in counsel fees—out of the wife's requested $40,188.62—was fair and reasonably incurred by the wife in the prosecution of these support proceedings. A court may award reasonable counsel fees at any stage in a support proceeding (*see* Family Ct Act § 438 [a]; *Matter of Ware v Ware*, 193 AD2d 684, 686 [1993]; *Sampson v Glazer*, 109 AD2d 831, 832 [1985]), and "numerous factors are relevant in considering the appropriateness of counsel fees in a given case, paramount among them is financial need" (*Kremler v Kremler*, 199 AD2d 901, 902 [1993]). Other factors include "the respective income of the parties, the nature and extent of the services rendered, the complexity of the issues involved and

the result achieved" (*Matter of Van Horn v Dahoda*, 272 AD2d 791, 792 [2000]). An application for counsel fees, however, should be denied when "both parties have sufficient assets and means to pay their respective expenses" (*Matter of Whittaker v Feldman*, 113 AD2d 809, 812 [1985]). Indeed, the wife merits counsel fees as there is a vast financial disparity between her and the husband (*see Yarinsky v Yarinsky*, 25 AD3d 1042, 1043 [2006]), but we cannot say that the court erred in limiting her award. Notably, in light of our upward adjustment to the husband's share of the combined parental income for child support purposes (83%) and consistent with Family Court's apportionment, the wife's award of counsel fees should be increased to $8,300.

Finally, the record also supports Family Court's decision to reject—by implication—the wife's request that the husband's counsel be sanctioned for frivolous conduct (*see* 22 NYCRR 130-1.1 [d]). The record throughout these proceedings reflects, as aptly captured by Family Court, that "both parties have been at fault for the extraordinarily prolonged litigation of this matter of support, such that the court does not weigh an award of fees based upon frivolousness or litigiousness of either party in awarding fees as against the other, but rather weighs a substantial reduction in the claim for fees largely on the extent that both parties expended enormous amounts of legal time on non-productive, meritless conduct."

We have considered each of the remaining support related issues raised by the respective parties and find them to be without merit.

Crew III, J.P., Peters, Rose and Kane, JJ., concur. Ordered that the order entered November 2, 2005 is modified, on the law and facts, without costs, by increasing respondent's child support obligation from $4,491 to $6,016 per month and by reducing spousal support to $1,200 per month, and, as so modified, affirmed. Ordered that the order entered March 9, 2006 is modified, on the facts, without costs, by increasing the amount of counsel fees payable to petitioner to $8,300, and, as so modified, affirmed.