■ NANCY J. ARMSTRONG, Appellant-Respondent, v HAROLD M. ARMSTRONG, Respondent-Appellant. [900 NYS2d 476]—

Lahtinen, J. (1) Appeal from an order of the Supreme Court (Connolly, J.), entered December 29, 2008 in Albany County, which, among other things, denied plaintiff's motion to preclude defendant's testimony, and (2) cross appeals from a judgment of said court, entered January 12, 2009 in Albany County, among other things, granting plaintiff a divorce and ordering equitable

distribution of the parties' marital property, upon a decision of the court.

The parties were married in November 1995 and have one child (born in 1996). Plaintiff commenced this action for divorce in March 2006 alleging, among other things, cruel and inhuman treatment. Following extensive discovery, a lengthy nonjury trial was held. During the trial, plaintiff objected and sought preclusion of certain evidence allegedly not produced in discovery and, at the close of trial, plaintiff moved for, among other things, discovery sanctions and counsel fees. Supreme Court denied those aspects of the motion in a decision and order entered in December 2008 and plaintiff appealed.[1] Supreme Court rendered a detailed written decision addressing the trial issues, and that decision was incorporated into the judgment of divorce entered in January 2009. In its decision, Supreme Court, among other things, granted plaintiff a divorce on the ground of cruel and inhuman treatment, awarded the parties joint legal custody of the child and granted plaintiff primary physical custody with liberal parenting time for defendant, directed defendant to pay $681.83 per month in child support, calculated the marital estate at $1,141,683.34 and awarded plaintiff 70% thereof, and declined to award plaintiff maintenance. Both parties appeal from the judgment.

We consider first plaintiff's argument that Supreme Court should have precluded defendant from introducing various proof at trial regarding his separate property as a sanction for failing to fully respond to her discovery demands. The trial court has broad discretion with respect to discovery (*see Cerasaro v Cerasaro*, 9 AD3d 663, 664 [2004]), including the appropriate penalty and, in such regard, "the remedy of preclusion is reserved for those instances where the offending party's lack of cooperation with disclosure was willful, deliberate, and contumacious" (*Kumar v Kumar*, 63 AD3d 1246, 1248 [2009] [internal quotation marks and citations omitted]; *see Ndulo v Ndulo*, 66 AD3d 1263, 1267 [2009]). Supreme Court noted that plaintiff had been directed at a conference three months before trial not to delay until the trial to seek resolution of any discovery issues, and yet she made no motion to preclude before trial. More importantly, Supreme Court found that plaintiff was not unduly prejudiced since she had access before the trial to the relevant information and the court concluded that defendant's conduct

---

**1.** Although the subsequent entry of the judgment of divorce requires dismissal of the appeal from this intermediate order, the issues asserted on the appeal from the order will be considered on the appeal from the final judgment (*see* CPLR 5501 [a] [1]; *Quinn v Quinn*, 61 AD3d 1067, 1069 n 1 [2009]).

was not willful. These determinations are supported by the record. We are unpersuaded that Supreme Court abused its discretion with regard to the discovery issue.

Defendant contends that plaintiff failed to prove that she was entitled to a divorce based upon his cruel and inhuman treatment. "To prevail on that ground, 'the party seeking the divorce must establish that the other party's conduct so threatened his or her physical or mental well-being that it would be unsafe or improper to continue to cohabit with the offending party' " (*Redgrave v Redgrave*, 304 AD2d 1062, 1063 [2003], quoting *Shortis v Shortis*, 274 AD2d 880, 880-881 [2000]). "Supreme Court, as the trier of fact, is vested with broad discretion in determining whether a spouse's conduct rises to the level of cruel and inhuman treatment, and its assessment of witness credibility is entitled to deference" (*Xiaokang Xu v Xiaoling Shirley He*, 24 AD3d 862, 863 [2005] [citations omitted], *lv denied* 6 NY3d 710 [2006]; *see Freas v Freas*, 33 AD3d 1069, 1070 [2006]; *Myers v Myers*, 255 AD2d 711, 712 [1998]).

The marriage had been marked by ongoing contentiousness and both parties had commenced divorce actions earlier in the marriage. Plaintiff's proof at trial, which Supreme Court found credible on this issue, set forth defendant's controlling nature and ongoing abusive behavior. This included repeated verbal abuse in which he referred to her by the most vile derogative names. He called her by such names in front of her teenage daughter, who had been born during plaintiff's prior marriage that ended when her then-husband died. Defendant accused plaintiff within the hearing range of her teenage daughter of sleeping around while her then-husband (the teenage daughter's father) was in the hospital dying. He also stated within hearing range of the teenage daughter that plaintiff had sexual relations with her own father. He crudely insulted plaintiff's smell, her hair and other aspects of her physical appearance. As set forth in detail by Supreme Court, defendant, who pleaded guilty in 2005 to federal tax-related criminal conduct and served a prison sentence, indicated at various times to plaintiff that he was going to incriminate her despite her lack of involvement in his crimes. Defendant further referred to plaintiff as someone he had picked out of the "slums of Albany" and he accused her of infidelity when, in fact, his own infidelity was acknowledged at trial. Considering cumulatively this proof, as well as the many other incidents of abusive behavior by defendant detailed in the voluminous record, we find that Supreme Court acted within its discretion in concluding that plaintiff should be granted a divorce on the ground of cruel and inhuman treatment.

Turning to the issue of custody of the parties' child, the overriding concern is the best interests of the child and a host of well known factors are relevant in making that determination (*see Matter of Holle v Holle*, 55 AD3d 991, 991-992 [2008]; *Matter of Gast v Gast*, 50 AD3d 1189, 1189 [2008]). Supreme Court weighed and discussed the pertinent factors, it fully explained the reasons for its custody determination, and it conducted a *Lincoln* hearing with the child. The child's Law Guardian favors maintaining custody as crafted by Supreme Court. There is a sound and substantial basis in the record for the custody determination and we discern no persuasive reason to disturb it (*see generally Matter of Robinson v Davis*, 58 AD3d 1041, 1042 [2009]; *Matter of Anson v Anson*, 20 AD3d 603, 604 [2005], *lv denied* 5 NY3d 711 [2005]).

Next, we consider issues raised regarding defendant's child support obligation. The three-step analysis of a child support award involves: first, ascertaining combined parental income; second, multiplying that amount (up to $80,000) by the applicable statutory percentage (17% for one child) and allocating the result between the parties based on each parent's share of total income; and, third, determining additional support if combined income exceeds $80,000 by considering the pertinent statutory factors (*see Holterman v Holterman*, 3 NY3d 1, 10-11 [2004]; *Matter of Cassano v Cassano*, 85 NY2d 649, 653 [1995]). Plaintiff and the Law Guardian correctly point out that Supreme Court made a mathematical error in the third step of this analysis. Defendant's annual income was determined as $84,191.97 and plaintiff's as $45,170.10, for a total of $129,362.07. Defendant's proportionate share was 65%, resulting in a monthly obligation on the first $80,000 of $736.67. As for the income that exceeded $80,000, the court considered various relevant statutory factors and then assessed child support on 50% of the $49,362.07 excess, which resulted in an additional monthly payment of $227.27 (i.e., $49,362.07 x .50 x .17 x .65 ÷ 12). However, instead of adding this amount to $736.67, the court accidentally added it to a different number arriving at a total of $681.83 when, in fact, the correct total is $963.94. The judgment must be modified accordingly.[2]

Plaintiff also argues that Supreme Court erred in not imput-

---

**2.** While the child support obligation is retroactive to the date of commencement (*see Burns v Burns*, 84 NY2d 369, 377 [1994]), this record contains ample evidence that defendant made monthly payments before the commencement of the action through the trial that exceeded his obligations under the Child Support Standards Act (*see* Domestic Relations Law § 240 [1-b]) and, accordingly, no further payment is owed for that period of time (*cf. Baraby v Baraby*, 250 AD2d 201, 205 [1998]; Scheinkman, New York Law of Domestic

ing to defendant his potential earning capacity in his newly-established business as a consultant. "[C]ourts have considerable discretion in fashioning a child support award; when assessing a parent's income from which to determine his or her child support obligation, a court should consider factors such as the parent's gross (total) income as . . . reported in the most recent federal income tax return, as well as additional income from sources other than employment and a parent's past income" (*Matter of Yarinsky v Yarinsky*, 36 AD3d 1135, 1137 [2007] [internal quotation marks and citations omitted]). Further, a court is "not bound by a parent's account of his or her own finances, and may impute income based upon a prior employment experience, as well as such parent's future earning capacity in light of that party's educational background, and underreported business activity or payment of personal expenses from business accounts" (*Matter of Rubley v Longworth*, 35 AD3d 1129, 1130 [2006] [internal quotation marks and citations omitted], *lv denied* 8 NY3d 811 [2007]; *see Moffre v Moffre*, 29 AD3d 1149, 1150 [2006]).

Determining defendant's income was a problematic task. During the 1990s, he worked for Albany Molecular Research where he became the chief financial officer earning about $200,000 per year. He had been asked to leave that company in 1998 and received at the time of his termination nearly $10 million for stock and options of the company that he had purchased. While he thereafter received passive income from some investments, he placed a significant amount of the buyout money in high risk investments that failed to materialize. He pleaded guilty to a federal crime in 2005 and received a 27-month jail sentence, during which he earned little income other than from his investments. His reputation and, concomitantly, his earning capacity were diminished by his criminal record, and Supreme Court was unpersuaded that there was sufficient proof to conclude that the prospects were particularly positive for significant earnings from his new consulting business. The court opted to use his most recent net worth statement rather than the 2006 income tax return (which had lower income because of his incarceration) since it found that the net worth statement more accurately reflected his actual income (*see Matter of Kellogg v Kellogg*, 300 AD2d 996, 996 [2002] [income earned during a tax year not completed at the commencement of trial may, under some circumstances, be weighed by the court]). Using that doc-

Relations § 16:54 [11 West's NY Prac Series 2009]). Any payment after the date of judgment for an amount less than $963.94 per month is subject to retroactive adjustment.

ument, Supreme Court based its income for defendant of $84,191.97 upon his work earnings of $20,529 plus investment income. While the income numbers were susceptible to more than one conclusion, Supreme Court's determination is supported by a sound and substantial basis in the record and does not stray beyond its considerable discretion (*see Bean v Bean*, 53 AD3d 718, 722 [2008]; *Matter of Kelly v Bovee*, 9 AD3d 641, 642 [2004]).

The parties dispute the equitable distribution award. A primary issue at trial involved the classification (separate or marital property) of the stock and stock options that had resulted in defendant (and a trust he had established) receiving a gross amount of close to $10 million as part of his severance agreement with Albany Molecular Research. Of the over 500,000 shares and options owned by defendant (353,068 individually and another 150,000 owned by the trust), Supreme Court determined that 14,137 shares, with a value of $178,678, were marital property. The court found that the remainder of the shares had been acquired before the marriage and were separate property. However, in light of defendant's significant role in contributing to the success of the company during the pertinent years, the court further determined that 10% of the appreciation in value of the company flowed from defendant's direct efforts and, hence, constituted marital property. The importance of defendant to the company's success was confirmed by various proof, including testimony of the company's chief executive officer. The court calculated the appreciation of these stocks and treated 10% of such appreciation as marital property, which computed to $565,579.29. We are satisfied that Supreme Court's determination was appropriate (*see generally Hartog v Hartog*, 85 NY2d 36, 46 [1995]).

The $178,678 from marital property shares was added to the $565,579.29 and a deduction of about one third the value was made for taxes paid on these assets by defendant, resulting in a total of $496,196.34. Supreme Court then added the net value of the parties' various other marital properties, including, among other things, the residence, a lake home, vehicles and sundry bank accounts. This resulted in a total marital estate of $1,141,683.34. After weighing the germane factors (*see* Domestic Relations Law § 236 [B] [5] [d]), and particularly noting defendant's wasteful dissipation of assets during the marriage, Supreme Court awarded plaintiff 70% of the marital estate. This resulted in an award to plaintiff of nearly $800,000.

Plaintiff asserts that during the marriage, defendant commingled property from the stocks with marital property and,

thus, all stock assets should have been treated as marital property. We are unpersuaded. Preliminarily, we note that "while the method of equitable distribution of marital property is properly a matter within the trial court's discretion, the initial determination of whether a particular asset is marital or separate property is a question of law" (*DeJesus v DeJesus*, 90 NY2d 643, 647 [1997]). Commingling separate property with marital property funds can result in separate property becoming marital property (*see Schwalb v Schwalb*, 50 AD3d 1206, 1209 [2008]; *Judson v Judson*, 255 AD2d 656, 657 [1998]). However, commingling only a part of separate property does not necessarily result in other separate property that has not been commingled being transmuted to marital property (*see Chernoff v Chernoff*, 31 AD3d 900, 903 [2006]).

When defendant received funds under his severance agreement with Albany Molecular Research, some of those funds were marital property (e.g., salary, bonus, payout for the 14,137 marital shares) and other funds were separate property. The payments from Albany Molecular Research were not, of course, broken down into such categories. Thus, although upon initial deposit of these payments into various bank accounts there was some commingling, there nevertheless was ample evidence presented at trial for Supreme Court to conclude that defendant maintained the separate nature of the property and the vast majority of the funds were placed in separate (rather than joint) accounts. The remaining arguments about the classification of the parties' property have been considered and found unavailing. Moreover, the court did not abuse its discretion in the method it used to equitably distribute the parties' marital property.

Plaintiff argues that she should have been awarded maintenance. We cannot agree. The trial court has discretion in addressing this issue so long as the pertinent statutory factors—including the marital standard of living—are considered (*see Carman v Carman*, 22 AD3d 1004, 1008 [2005]; *see also Bean v Bean*, 53 AD3d 718, 723 [2008]). "It is settled that the purpose of maintenance is 'to provide temporary support while the recipient develops the skills and experience necessary to become self-sufficient' " (*Wheeler v Wheeler*, 12 AD3d 982, 983 [2004], quoting *Garvey v Garvey*, 223 AD2d 968, 970 [1996]). Plaintiff has had steady employment as a hairstylist since before the marriage, she also became a real estate appraiser during the marriage and she owns unencumbered rental property. As part of the equitable distribution of the parties' property she was awarded the marital residence. Supreme Court noted plaintiff's

"ability to support herself, her relative good health, the shorter duration of the parties' marriage, the support for the parties' child, and the equitable award." The decision not to award maintenance was within the ambit of the court's discretion under the facts of this case.

Plaintiff contends that she should have been awarded counsel fees. Pursuant to Domestic Relations Law § 237 (a), counsel fees may be awarded to a spouse in a divorce action "to enable that spouse to carry on or defend the action or proceeding as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties." In determining whether to award counsel fees, the court may consider such factors as the relative financial circumstances of the parties, the complexity of the case and the extent of legal services rendered, " 'together with all the other circumstances of the case, which may include the relative merit of the parties' positions' " (*Johnson v Chapin*, 12 NY3d 461, 467 [2009], quoting *DeCabrera v Cabrera-Rosete*, 70 NY2d 879, 881 [1987]; *see Blay v Blay*, 51 AD3d 1189, 1193 [2008]).

We do not take issue with Supreme Court's sentiment that, although the proceedings were protracted, the underlying issues were not sufficiently complex to justify much of the billing of plaintiff's counsel; particularly charging over $100,000 for preparing posttrial submissions. However, we disagree with the court's finding that the equitable distribution award placed the parties in a relatively comparable financial position, as the record establishes that defendant retained substantial assets that were not subject to equitable distribution. In addition to the disparity between the parties' respective financial resources, there is evidence that defendant may have engaged in some conduct that obstructed the discovery process, causing delay and prolonging the trial (*see Johnson v Chapin*, 12 NY3d at 467; *Nelson v Nelson*, 290 AD2d 826, 828 [2002]). In our view, the totality of the circumstances warrant an award of partial counsel fees to plaintiff (*see generally Freas v Freas*, 33 AD3d 1069, 1071 [2006]; *Nelson v Nelson*, 290 AD2d at 828 [2002]). Accordingly, we remit the matter to Supreme Court to conduct a hearing and make an appropriate award (*see Redgrave v Redgrave*, 304 AD2d 1062, 1066-1067 [2003]).

The remaining issues have been considered and found unavailing.

Peters, J.P., Spain, Stein and Garry, JJ., concur. Ordered that the appeal from the order is dismissed, without costs. Ordered that the judgment is modified, on the facts, without costs, by increasing defendant's child support obligation to $963.94 per

month; matter remitted to the Supreme Court to conduct a hearing and make an appropriate award of counsel fees; and, as so modified, affirmed.