McCarthy, J.P.
Appeal from a judgment of the Supreme Court (Breen, J.), entered March 25, 2014 in Warren County, granting, among other things, equitable distribution of the parties’ marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married on April 6, 2002 and are the parents of two children (born in 2003 and 2007). Less than eight years later, in January 2010, the parties separated and began living apart, and, before this action was commenced, on April 13, 2010, Family Court entered a temporary support order directing the husband to pay child support and spousal maintenance and to make all payments related to the marital home. The wife commenced this matrimonial action on May 5, 2010, after which it was removed to Supreme Court, and, on November 4, 2011, the parties stipulated to sharing legal custody of the children and awarding the wife primary physical custody. Prior to the trial, the wife made multiple unsuccessful motions to preclude the husband from presenting evidence of the value of disputed assets, which included, among other things, multiple motels, car washes and other real property. Following 30 days of testimony, in March 2014, Supreme Court granted the wife a divorce on the uncontested ground of cruel and inhuman treatment, equitably distributed the marital property and adjusted the pendente lite order by modifying child support and maintenance. The wife now appeals.
First, the wife argues that Supreme Court erred in denying her motions to preclude the husband from offering evidence as to the value of disputed assets at trial and in denying her mo *1165 tion to sanction the husband by deeming proven her allegations regarding the value of said assets. A trial court “is vested with broad discretion in controlling discovery and disclosure, and generally its determinations will not be disturbed in the absence of a clear abuse of discretion” (Gold v Mountain Lake Pub. Telecom., 124 AD3d 1050, 1051 [2015] [internal quotation marks and citation omitted]; see Kumar v Kumar, 63 AD3d 1246, 1248 [2009]). However, “the remedy of preclusion is reserved for those instances where the offending party’s lack of cooperation with disclosure was willful, deliberate, and contumacious” (Kumar v Kumar, 63 AD3d at 1248 [internal quotation marks and citations omitted]; see CPLR 3126 [2]; Armstrong v Armstrong, 72 AD3d 1409, 1410 [2010]). Moreover, it is axiomatic that a party cannot be compelled to produce documents that the party does not have or that do not exist (see Matter of Scaccia, 66 AD3d 1247, 1250 [2009]; Moak v Raynor, 28 AD3d 900, 904 [2006]).
In June 2010, the wife moved to preclude the husband from offering evidence or testifying as to any financial information that he failed to thus far disclose. Supreme Court ordered the husband to provide certain requested items and delayed ruling on the preclusion motion. In March 2011, the wife again moved to preclude the husband from presenting evidence, this time related to his income or the value of his businesses, based on the allegation that he continued to fail to disclose requested information. By an order dated April 12, 2011, Supreme Court found that the husband had not provided adequate financial information to the wife and conditionally precluded him from “opposing the testimony of [the wife] and her experts or from introducing evidence at trial regarding [his] unreported or underreported income and the value of his businesses” unless he disclosed the information requested in certain of the wife’s notices of discovery, a letter from the wife’s counsel, and, more generally, “other outstanding demands” within a specified time frame.
Without seeking any subsequent ruling on whether the husband had complied with the April 2011 preclusion order, in June 2011, the wife sought an even broader preclusion order awarding her a default judgment consistent with the allegations in her complaint. Supreme Court granted the wife’s order to show cause in regard to this request, and both parties submitted evidence in regard to the husband’s compliance with discovery. As is relevant here, in December 2011, the wife requested that the court clarify what the husband would or would not be precluded from presenting at trial and, again, *1166 moved to preclude the husband from offering evidence as to his undisclosed financial information. In May 2012, the court ruled that the husband would not be precluded from presenting any evidence at trial, but specified that the wife could make further motions during the trial as to specific evidence. Thereafter, the wife made additional unsuccessful motions at the trial to preclude the husband from opposing her evidence of the values of property and businesses, and she argued that the husband should be precluded from presenting evidence about the vacancy rates of certain resorts at issue since he had previously testified that he did not know what they were.
The evidence before Supreme Court regarding the husband’s compliance with discovery requests was largely contested. Each party submitted evidence indicating that the other had either destroyed or hidden records related to the businesses and properties at issue. The wife submitted the affidavit of a computer expert who averred, among other things, that the husband had generally not allowed him to conduct the type of examination of the husband’s computers that the expert desired and further concluded that it was “highly unusual” how little data he was able to find on the computers. The husband maintained that the “few records” he had regarding his motels had been corrupted, along with his work computer, and that he did not back-up his business computers after 2005. He further averred that he had used printed-out daily reports as an alternative to digitally backing up his computers, but that the wife had removed those documents from the family home.
Independent of these assertions, the husband disclosed, among other things, his personal and business tax returns, schedules of income, expenses and balance sheets for his businesses, mortgage documents for the marital home, copies of insurance documents and guaranty agreements for his businesses, credit card and bank statements, promissory notes related to his businesses, real property tax bills, mortgages and deeds related to his businesses, Social Security earnings statements, contracts and leases regarding his businesses, titles to vehicles he or his businesses owned, and computer files. The husband averred that, at the time of the order to show cause, he had provided more than 30,000 documents in response to the wife’s demands for financial and business records and testified for more than 20 hours during depositions. The husband explained that he had met with the wife’s real estate appraisers to allow them to view properties at issue and met with the wife’s computer expert when he examined the husband’s computers. In regard to those discovery requests *1167 that he did not fulfill, the husband averred that he did not have the requested documents or that such documents never existed. We are unable to conclude, upon this record, that Supreme Court abused its considerable discretion in accepting the husband’s representations and finding that he had meaningfully attempted to comply with the wife’s discovery demands, and that, as a result, the wife’s requested sanctions were unwarranted (see Matter of Scaccia, 66 AD3d at 1250; Kumar v Kumar, 63 AD3d at 1249). Likewise, as to the wife’s additional trial motions, we cannot say that the court abused its discretion in finding that the wife failed to establish that any lack of cooperation with disclosure on the husband’s part was willful, deliberate and contumacious so as to warrant the drastic remedy of preclusion (see Armstrong v Armstrong, 72 AD3d at 1410-1411; Matter of Blauman-Spindler v Blauman, 68 AD3d 1105, 1107 [2009]).
Next, Supreme Court did not err in concluding that certain property that the husband took title to during the marriage was separate property due to the fact that the husband received it in exchange for separate property. Separate property includes property “acquired in exchange for . . . separate property” (Domestic Relations Law § 236 [B] [1] [d] [3]). During the marriage, the husband assigned his 50% ownership interest in a particular car wash (hereinafter the Queensbury Car Wash) and its lot to his business partner, Kenneth Ermiger, in exchange for Ermiger’s half share of Boulders Co., LLC, Adirondack Car Wash, LLC and SE Realty. The Queensbury Car Wash and its lot were purchased in 2001, prior to the parties’ marriage, and therefore constituted the husband’s separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]). Moreover, the mere fact that said property exchange was negotiated during the marriage — as would generally be true of a separate property transfer pursuant to Domestic Relations Law § 236 (B) (1) (d) (3) — does not, on its own, make the exchange active management that would entitle the wife to a portion of Boulders Co., Adirondack Car Wash or SE Realty. Further, there is no evidence here that the transfer was the result of any considerable or unusual negotiation efforts on the husband’s part during the marriage. Moreover, to the extent that the wife argues that the active appreciation of Queensbury Car Wash after the marriage and prior to the transfer renders some or all of the property received in the transfer marital, we disagree. Any evidence suggesting that the Queensbury Car Wash appreciated in value between the marriage and the date of the property transfer was provided by one of the wife’s experts. Notably, Supreme Court specifically held that it did *1168 “not find credible [this expert’s] valuation report . . . regarding the businesses of the [husband].” Deferring to that credibility determination, the wife failed to prove that the Queens-bury Car Wash appreciated in value during the relevant time period (see Van Dyke v Van Dyke, 273 AD2d 589, 592 [2000]).
Further, we find no error in Supreme Court’s conclusions that certain property was the husband’s separate property[1] and that it did not appreciate in value during the course of the marriage. More particularly, Supreme Court specifically credited the valuations of the husband’s expert appraiser and his conclusions that Route 146 Car Wash, Inc. and its related car wash, the Quaker Road Car Wash and the Warrensburg Car Wash did not appreciate in value during the marriage. Moreover, the court discredited the valuation of the wife’s expert appraiser that the Broad Street Car Wash appreciated in value during the course of the marriage and, therefore, found that the wife failed to meet her burden of establishing an appreciation in value of separate property. Deferring to the court’s credibility determinations, we find that the wife failed to meet her burden of proof of establishing any appreciation of these properties during the marriage (see Albanese v Albanese, 69 AD3d 1005, 1006 [2010]; Burgio v Burgio, 278 AD2d 767, 769 [2000]).
Next, even if we assume that Supreme Court erred by finding insufficient evidence to establish that the Boulder Resort and the Hudson Falls shopping plaza — held to be the husband’s separate property — appreciated in value during the course of the marriage,[2] there was insufficient proof to establish that such increases were marital property. A nontitled spouse seeking an interest in the appreciation of separate property occurring during the marriage “b[ears] the burden of establishing that the increased value was due in part to his [or her] efforts as opposed to market forces or other unrelated factors” (Bonanno v Bonanno, 57 AD3d 1260, 1261 [2008]; see Karas-Abraham v Abraham, 69 AD3d 428, 430 [2010]; Chernoff v Chernoff, 31 AD3d 900, 903 [2006]). As Supreme Court noted as an alternative holding, the wife failed to meet that burden here. More particularly, the wife’s expert appraiser, Jacqueline Conti, specifically acknowledged that the wife asked her to *1169 form an opinion regarding the degree to which any appreciation in the properties at issue was the result of active management as opposed to passive market forces. Conti conceded that she was unable to form such an opinion. Conti explained that, partially because the properties included both actively run businesses and real estate, she was unable to form an opinion regarding the degree to which any appreciation of said properties during the marriage was due to active management as opposed to market forces. Accordingly, Supreme Court did not err in finding that the wife failed to put forth evidence as to the degree to which the Boulder Resort and the Hudson Falls shopping plaza appreciated in value during the marriage due to active management (see Linda D. v Theo C., 96 AD3d 432, 432-433 [2012]; Karas-Abraham v Abraham, 69 AD3d at 430; Bonanno v Bonanno, 57 AD3d at 1261).
Nonetheless, we agree with the wife that Supreme Court erred in concluding that all of the insurance policies purchased by the husband were entirely his separate property due to the fact that he took out the polices prior to the marriage or, for policies taken out after the marriage, in exchange for his separate property. The husband acknowledged that, during the marriage, he had “rolled over” two life insurance policies on his business partner’s life for which he was the beneficiary and which he had initially taken out prior to the marriage. Supreme Court relied on the record evidence that, in February 2006, the husband “rolled over” one of these policies for the cash value of $18,424.43 and the other policy for $18,002.34. Moreover, the court also relied on the evidence that, as of January 2010, the net cash values of the two policies were respectively $47,174.54 and $46,935.97. Finally, the husband testified that he paid the premiums for these policies out of revenues from the Boulder Resort, a business he actively managed during the marriage. Because the husband was personally named as the beneficiary, the premium payments were a form of income to him constituting marital property (see generally DeJesus v DeJesus, 90 NY2d 643, 647-648 [1997]). As a result, there is ample evidence to conclude that these insurance policies together appreciated by $57,683.73 due to the contribution of marital funds. As to the remainder of the insurance policies at issue, however, the wife did not submit evidence that would provide a reasonable basis to determine what portion of any of the policies should be treated as marital property due to appreciation in value attributable to the payment of premiums by marital funds (see LaBarre v LaBarre, 251 AD2d 1008, 1008-1009 [1998]; Turner v Turner, 145 AD2d 752, 753 [1988]).
Upon our conclusion that an additional $57,683.73 associ *1170 ated with the aforementioned life insurance policies is marital property, we find it appropriate to award that entire amount to the wife. With that increase in assets distributed to the wife, she now receives approximately 45% of the value of the marital property, while the husband receives 55% of the value of the marital property (see generally Murphy v Murphy, 4 AD3d 460, 461 [2004], lv denied 3 NY3d 612 [2004]; Antoian v Antoian, 215 AD2d 421, 422 [1995]).
Next, the wife contends that Supreme Court improperly imputed too much income to her and too little to the husband and, as a result, erred in its maintenance and child support determinations. Income may be imputed to a party where he or she “does not report all of his or her income, where personal expenses are paid through a business account and where a party’s earning capacity is enhanced by his or her employment [,] experience and education” (Pfister v Pfister, 146 AD3d 1135, 1137 [2017] [citations omitted]; Armstrong v Armstrong, 72 AD3d at 1413; Antoian v Antoian, 215 AD2d at 422).
Here, with regard to the parties’ respective incomes, Supreme Court discredited the testimony of both parties’ expert witnesses. Further, the court explicitly relied on the parties’ income tax returns between 2002 and 2011, the parties’ net worth statements and the husband’s credit applications and testimony. Based on this evidence, the court imputed $173,000 of gross annual income to the husband. The wife’s testimony established that she had a Master’s degree in reading and had taught at various times prior to and during the marriage. Notably, the wife testified that, as a teacher in 2000, she made between $45,000 and $50,000. The court specifically found incredible the testimony that the wife — who was then a substitute teacher — would be unable to become employed again as a teacher, and it imputed $50,000 of gross annual income to her. Considering the foregoing, and deferring to Supreme Court’s credibility determinations, we find no basis to disturb Supreme Court’s determinations as to the parties’ respective incomes (see Macaluso v Macaluso, 145 AD3d 1295, 1296-1297 [2016]; Smith v Smith, 1 AD3d 870, 871-872 [2003]).
Finally, the wife’s contention that Supreme Court erred in failing to direct the husband to return converted gifts from the children is without merit. Initially, although both parties agreed that the husband’s business partner had made gifts to the children during the course of the marriage, the wife was unsure of the exact amounts of the gifts. Generally, however, she alleged that the husband withdrew money from the joint bank account funded with these gifts for the children and used *1171 them for his own expenses. In contrast, the husband testified that he and the wife agreed to withdraw the money from the joint bank account where the gifts were deposited in order to use the funds on vacations, clothing and other items for the children. Given the evidence that the funds from this account were withdrawn and used for the benefit of the children, and deferring to Supreme Court’s superior position to determine the credibility of these competing claims (see Scarlett v Scarlett, 35 AD3d 710, 711 [2006]), we find no error in the court’s determination to deny the wife’s request that the husband be ordered to reimburse these funds to the children. We have examined the wife’s remaining contentions and find them to be without merit.
Egan Jr., Lynch, Devine and Clark, JJ., concur.
Ordered that the judgment is modified, on the law and the facts, without costs, by reversing so much thereof as found the two Hartford life insurance polices to be entirely defendant’s separate property; $57,683.73 in appreciation of said policies is marital property, the entirety of which shall be distributed to plaintiff; and, as so modified, affirmed.

. The separate property status of these properties was established by evidence that the husband acquired the properties before the marriage or acquired them in the aforementioned exchange of the husband’s separate property.

. Notably, even the husband’s expert opined that these properties appreciated in value during the course of the marriage.