Colucci v Stuyvesant Plaza, Inc. (2018 NY Slip Op 00211)





Colucci v Stuyvesant Plaza, Inc.


2018 NY Slip Op 00211


Decided on January 11, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: January 11, 2018

524888

[*1]LORA COLUCCI et al., Appellants,
v
STUYVESANT PLAZA, INC., Respondent.

Calendar Date: November 16, 2017

Before: McCarthy, J.P., Lynch, Mulvey and Aarons, JJ.


Oliver Law Office, Albany (Lewis B. Oliver Jr. of counsel), for appellants.
Maynard, O'Connor, Smith & Catalinotto, LLP, Albany (Robert A. Rausch of counsel), for respondent.


Mulvey, J.

MEMORANDUM AND ORDER
Appeal from an order of the Supreme Court (Kramer, J.), entered July 14, 2016 in Schenectady County, which, among other things, granted defendant's motion for summary judgment dismissing the amended complaint.
Plaintiff Lora Colucci was the owner and operator of plaintiff Yar-Lo, Inc., doing business as Merle Norman Cosmetics, a cosmetics franchise business. Beginning in 1990, plaintiffs leased premises in a shopping plaza known as Stuyvesant Plaza, which is owned by defendant. During the lease period, the premises experienced problems with its sewage system resulting in multiple floods and sewage backups, reportedly exposing Colucci and the premises to mold and raw sewage. Plaintiffs ceased operations and vacated the premises in April 2005, and then
Yar-Lo sued its insurance company for damages under the business interruption coverage of its policy. The insurer was later awarded summary judgment dismissing that complaint based upon its unrefuted showing that the business had not been forced to close as a direct result of the malfunctioning sewage system, which defendant had repaired by the end of 2004 (Yar-Lo, Inc. v Travelers Indem. Co., 130 AD3d 1402 [2015]).
In 2007, plaintiffs commenced this action against defendant for personal injuries and business income loss, alleging that Colucci's exposure to raw sewage and mold between September and December 2004 caused various serious health problems and required her to close the business. Plaintiffs alleged that defendant had breached the lease agreement by, among other [*2]deficiencies, failing to maintain the sewage ejector pump [FN1]. After issue was joined and years of ongoing discovery, Supreme Court issued a scheduling order requiring that the parties exchange expert disclosure by May 1, 2015, and that dispositive motions be filed by August 1, 2015, and set a trial date in November 2015. While defendant complied with the order by timely serving expert disclosure on plaintiffs' then-counsel, plaintiffs failed to do so.
Defendant moved for summary judgment in July 2015 based upon, among other grounds, plaintiffs' complete lack of expert disclosure and failure to submit any expert proof that Colucci's injures and damages were caused by defendant's actions. Defendant contended that plaintiffs should be precluded from presenting any expert proof. Plaintiffs were thereafter granted numerous extensions and adjournments, during which their counsel was relieved and new counsel retained; the delays were conditioned on compliance with the scheduling order and the understanding that discovery would not be reopened and there would be no extensions of time to comply with the scheduling order regarding, among others, expert disclosure. In May 2016, plaintiffs filed papers in opposition to defendant's summary judgment motion, attaching for the first time, as relevant here, affidavits from four witnesses: Colucci, Nigel Domer (a plumber), Charles Palmer (a certified service technician) and Eckardt Johanning (Colucci's treating physician). Defendant requested that the affidavits be rejected as untimely, as they were first disclosed over a year after the court-ordered deadline. Following oral argument, Supreme Court rendered a decision from the bench, later reduced to a written order, granting defendant's motion for summary judgment dismissing the complaint [FN2]. Plaintiffs now appeal.
We affirm. Initially, Supreme Court did not issue a written decision explaining its reasoning, and the transcript of its ruling from the bench is not entirely clear, making judicial review more difficult. Nonetheless, after careful review, we find that defendant established its entitlement to summary judgment dismissing the amended complaint, which plaintiffs failed to rebut. Colucci's negligence action required proof that defendant owed her a duty, breached that duty and that the breach was the proximate cause of the injuries complained of (see Pasternack v Laboratory Corp. of Am. Holdings, 27 NY3d 817, 825 [2016]). We find that defendant made a prima facie case establishing its entitlement to summary judgment dismissing plaintiffs' complaint based upon plaintiffs' failure and inability to prove causation (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d 762, 781 [2014]).
On the issue of causation, defendant submitted the affidavit of Michael Holland, a physician specializing in occupational medicine and medical toxicology, who has extensively treated people exposed to toxic substances. Holland reviewed Colucci's medical records and the [*3]testing documentation from the premises and concluded that "any theory of direct causation between sewage and mold exposure and the physical injuries [that Colucci] is alleging, is novel and is not generally accepted within the medical or scientific community." He further opined that exposure to mold at the level found at the premises "do[es] not cause injury or ailment of any significance or duration" and that the theories espoused by her treating physician, i.e., Johanning, "are considered unsupported fringe theories" that have "no scientific support." He concluded that she had been exposed to "very low levels" and only "for a limited duration," which was "not sufficient to cause adverse health issues of significance, and certainly could not be a cause of any of her ongoing medical conditions." Defendant also submitted the testimony and affidavit of Janet Kaplan, its property manager and an attorney, who explained that defendant's maintenance crew had repaired and replaced the sewer ejector pump on the premises on several occasions as a courtesy, but that the lease placed the obligation on plaintiffs to repair the plumbing fixtures, which included the pump in issue. Upon review of the record, we find that defendant made a prima facie case with expert proof establishing that it did not breach any duty to plaintiffs and that there was no causal relationship between Colucci's exposure to mold and sewage on the premises and her injuries or economic losses, shifting the burden to plaintiffs to tender proof that raises a triable issue of fact (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d at 783-784; Kendall v Amica Mut. Ins. Co., 135 AD3d 1202, 1205, 1207-1208 [2016]).
In response to defendant's motion, plaintiffs failed to tender sufficient proof to raise a question of fact so as to defeat defendant's prima facie proof. To rebut defendant's motion, plaintiffs submitted several expert affidavits, which Supreme Court refused to consider because plaintiffs had not timely disclosed them by the court-ordered expert disclosure deadline, and then had disclosed them only in response to defendant's motion. Importantly, a trial court "is vested with broad discretion in controlling discovery and disclosure, and generally its determinations will not be disturbed in the absence of a clear abuse of discretion" (Seale v Seale, 149 AD3d 1164, 1165 [2017] [internal quotation marks and citation omitted]). With regard to expert disclosure, pursuant to CPLR 3101 (d) (1) (i), as here relevant, "[u]pon request, each party [is required to] identify each person whom the party expects to call as an expert witness at trial and [to] disclose in reasonable detail the subject matter on which each expert is expected to testify, the substance of the facts and opinions on which each expert is expected to testify, the qualifications of each expert witness and a summary of the grounds for each expert's opinion" (see Schmitt v Oneonta City Sch. Dist., 151 AD3d 1254, 1255 [2017]).
Despite Supreme Court's scheduling order requiring expert disclosure by May 1, 2015, it is uncontroverted that plaintiffs failed to comply and first identified their experts and submitted their affidavits in opposition to defendant's summary judgment motion over one year later (see Tienken v Benedictine Hosp., 110 AD3d 1389, 1391 [2013]). Plaintiffs did not request an extension for disclosure or provide a viable excuse or good cause for failing to comply over this protracted period, and the numerous adjournments were granted at their request with the express condition that the court-ordered discovery and disclosure schedule was not being extended (see id.; Amodeo v Town of Marlborough, 307 AD2d 507, 509 [2003]; Cramer v Spada, 203 AD2d 739, 740 [1994], lv denied 84 NY2d 809 [1994], cert denied 514 US 1055 [1995]; see also Douglass v St. Joseph's Hosp., 246 AD2d 695, 696 [1998]; compare Klotz v Warick, 53 AD3d 976, 979 [2008], lv denied 11 NY3d 712 [2008]). Plaintiffs were not entitled to "ignore court orders with impunity" (Gibbs v St. Barnabas Hosp., 16 NY3d 74, 81 [2010] [internal quotation marks and citation omitted]). Under these circumstances, we cannot conclude that Supreme Court abused its discretion in precluding plaintiffs from submitting the expert affidavits and [*4]opinions of Colucci,[FN3] Domer [FN4] and Johanning in opposition to defendant's motion and at trial (see CPLR 3101 [d] [1] [i]; 3126 [2]; Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 139 AD3d 1192, 1195-1196 [2016]; Tienken v Benedictine Hosp., 110 AD3d at 1391).
With regard to Johanning, Colucci's treating physician, this Court has interpreted CPLR 3101 (d) (1) (i) as "requiring disclosure of any medical professional, even a treating physician or nurse, who is expected to give expert testimony" (Schmitt v Oneonta City Sch. Dist., 151 AD3d at 1255 [internal quotation marks, brackets and citation omitted]). Thus, while Johanning was listed in Colucci's responses to defendant's bill of particulars as one of 28 treating physicians or medical providers, and medical treatment records for her were disclosed, this at most indicated to defendant that Johanning might have been called as an expert by plaintiffs; it did not obviate the need for plaintiffs to comply with CPLR 3101 (d) (1) (i) and Supreme Court's order by disclosing their intent to rely on him as an expert, as well as the substance of the facts and opinions to which he was expected to testify (see Schmitt v Oneonta City Sch. Dist., 151 AD3d at 1255-1256). To that end, the expert disclosure statute requires, in relevant part, "reasonable detail [of] the subject matter on which [the] expert is expected to testify, the substance of the facts and opinions . . . and a summary of the grounds for [the] expert's opinion" (CPLR 3101 [d] [1] [i]), none of which was timely disclosed to defendant (compare Mary Imogene Bassett Hosp. v Cannon Design, Inc., 97 AD3d 1030, 1031-1032 [2012]). Notably, "the burden of providing expert witness disclosure and setting forth the particular details required by the statute lies with the party seeking to utilize the expert; it is not opposing counsel's responsibility to cull through [copious medical records] to ferret out the qualifications of the subject expert, the facts or opinions that will form the basis for his or her testimony at trial and/or the grounds upon which the resulting opinion will be based" (Schmitt v Oneonta City Sch. Dist., 151 AD3d at 1255-1256). Moreover, the record supports Supreme Court's conclusions that Johanning's expert affidavit, submitted for the first time in opposition to defendant's motion, offered substantially new medical and scientific theories not reflected in his medical records (see Valentine v Lopez, 283 AD2d 739, 742 [2001]). Thus, the court providently precluded Johanning's expert affidavit and testimony.
Even had Johanning been permitted to offer an opinion as a treating physician limited to his care, treatment, observations and opinions as reflected in his medical records, his treatment records were inadequate to establish causation. To prove causation due to exposure to toxins, such as mold or raw sewage as alleged in the negligence cause of action, Colucci was required to "set forth [her] exposure to a toxin, that the toxin is capable of causing the particular illness (general causation) and that [she] was exposed to sufficient levels of the toxin to cause the illness [alleged] (specific causation)" (Kendall v Amica Mut. Ins. Co., 135 AD3d at 1205 [internal [*5]quotation marks and citation omitted]). We agree with Supreme Court's finding that — in contrast to Holland's expert opinion — Johanning's medical records are conclusory and vague and fail to establish specific causation (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d at 783-784; Parker v Mobil Oil Corp., 7 NY3d 434, 448-450 [2006]). Likewise, the claim for economic damages, as amplified in the responses to defendant's bill of particulars, is premised upon the theory that defendant's breach of the lease by failing to repair the ejector pump caused health problems for Colucci, rendering her unable to work and requiring the closure of the business. Given plaintiffs' complete failure of proof on the issue of causation related to Colucci's health problems, the claim for resulting economic loss must also fail.
We are mindful that "the remedy of preclusion is reserved for those instances where the offending party's lack of cooperation with disclosure was willful, deliberate, and contumacious" (Seale v Seale, 149 AD3d at 1165 [internal quotation marks and citation omitted]). Under these circumstances, we discern no basis upon which to disturb Supreme
Court's implicit conclusion that plaintiffs' failure to provide any expert disclosure for over one year was willful and warranted the sanction of preclusion of their experts (see CPLR 3126; Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 139 AD3d at 1194; BDS Copy Inks, Inc. v International Paper, 123 AD3d 1255, 1256-1257 [2014]; compare Graham v New York State Off. of Mental Health, 154 AD3d 1214, 1217 [2017]; Seale v Seale, 149 AD3d at 1165; Kim v A. Johnson Plumbing & Heating, Inc., 148 AD3d 1312, 1313 [2017]). Given the absence of any admissible expert testimony to support either of plaintiffs' claims so as to rebut defendant's prima facie showing, Supreme Court properly granted summary judgment to defendant (see Cornell v 360 W. 51st St. Realty, LLC, 22 NY3d at 783-784; Tienken v Benedictine Hosp., 110 AD3d at 1391; Colon v Chelsea Piers Mgt., Inc., 50 AD3d 616, 617 [2008]).[FN5]
McCarthy, J.P., Lynch and Aarons, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1: The lease required plaintiffs to maintain and repair the "plumbing fixtures," forbade plaintiffs or its employees from damaging that system and exculpated defendant from liability "for any injury or damage to persons or property resulting from . . . water . . . or leaks from any part of the . . . [p]remises . . . or from . . . plumbing." The parties dispute whose obligation it was under the lease to make the necessary repairs in issue.

Footnote 2: Supreme Court also denied plaintiffs' cross motion for declaratory relief under the lease terms, made by their former counsel in October 2015 and not adopted by their new counsel, based upon plaintiffs' failure to submit any evidence in support thereof.

Footnote 3: Colucci's affidavit proffered an expert opinion on her economic loss and damages. We do not agree with Supreme Court's conclusion that she was not qualified to render an expert opinion, given her business experience and MBA in finance and marketing (see Hurrell-Harring v State of New York, 119 AD3d 1052, 1053 [2014]). However, we discern no abuse of discretion in the court's alternate ruling that Colucci was precluded as an expert due to plaintiffs' failure to timely disclose her as an expert under the court's order.

Footnote 4: Plaintiffs conceded before Supreme Court that Domer's affidavit was submitted to render an expert opinion. 

Footnote 5: The affidavit of Palmer, a certified service technician, reflects that he was to be an expert as well as a fact witness, in that he had serviced the premises on several occasions after there were complaints. The disclosure order likewise applied to him to the extent that he was to offer an expert opinion. While Supreme Court erred in precluding Palmer's affidavit and testimony to the extent that he was to testify as a fact witness, absent expert testimony to establish causation, this error did not alter defendant's entitlement to summary judgment.